# Sutton's Appeal.

1. The practice of allotting purparts in partition on oral bids, is con-
trary to the Act of April 22d, 1836.

2. Where however one participates in an allotment in partition, on oral
bids; receives and retains some of the benefits therefrom, he will not
be permitted to interpose an objection to the title of the others obtained
in the same manner.

April 22d, 1886. Before MERCUR, C. J., GORDON, PAX-
SON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

APPEAL from the Orphans' Court of *Montgomery County :*
Of January Term, 1886, No. 406.

Appeal of William Henry Sutton from a decree of said
court adjudging and decreeing purpart No. 6 of the real
estate of which Lewis Warner died seised, to Gardiner L.

Warner on an oral bid in open court in proceedings in partition in said estate.

The following is the case as it appeared in the court below. Lewis Warner died April 9th, 1872, intestate seised of about six acres of land situate in Montgomery County. He left surviving him a widow, but no children and nine brothers and sisters.

His widow assigned all her interest in his estate to his mother, Jane Warner, who died May 15th, 1882, having by her will devised it to her executor, Gardiner L. Warner, in trust, with power to sell.

His brothers and sisters are as follows:

1. Hamill Warner, eldest brother, who died intestate January 19th, 1873, leaving four children, William, Isaac R., Emily, wife of R. I. Davis, and Hannah, wife of William A. Bell.

William, Emily and Hannah, with their husbands, conveyed their three fourths of their father's share of this tract to William Henry Sutton.

2. Eliza A. Warner, who died September 6th, 1875, devised all her estate to her mother, Jane Warner, who devised to Charles A Warner.

3. Levi E. Warner died October 18th, 1881, leaving a will, appointing his widow, Emma, and Lewis T. Brooke executors, with power to sell, etc. They assigned to Charles A. Warner, brother of Lewis, in fee.

4. Isaac Warner.

5. Jacob L. Warner.

6. Rebecca J. Arthur, widow.

7. Penrose E. Warner.

8. Charles Anderson Warner.

9. Gardiner L. Warner.

On April 6th, 1885, the petition of Isaac Warner, Jacob L. Warner, Rebecca J. Arthur, Charles A. Warner, Gardiner L. Warner, brothers and sister, and of Isaac R. Warner, nephew of decedent, was presented to the Orphans' Court for an inquest to make partition of the said tract, of which the said Lewis Warner had died seised.

An inquisition was awarded. The inquest divided said tract of land into six purparts and valued them as follows:

No. 1 was valued at $2,100.00; No. 2 at 1,883.33; No. 3 at 2,091.67; No. 4 at 2,383.66; No. 5 at 6,283.67; No. 6 at 10,466.67.

After the inquest had filed their report a rule was granted on the heirs, and all parties interested to appear in court, to accept or refuse the estate of the decedent at the valuation.

The manner in which the proceedings were conducted in

[Sutton's Appeal.]

open court, and the elections and consequent adjudications made, were as follows, as reported by Neville D. Tyson, Esq., who was afterwards appointed Auditor to ascertain and report' liens or incumbrances affecting the interests of the parties, and to marshal the same, and also to ascertain and apportion owelty and dower, and the costs and expenses of said partition, and also to state the amount of recognizances and bonds to be given by the parties accepting said real estate, and to do any other matters or things properly appertaining and belonging to said matter, and including the taxes on said premises taken as aforesaid, if necessary.

At the time appointed, October 10th, 1885, all of the parties in interest (except Penrose E. Warner, who neglected to appear), appeared in open court in obedience to the rule granted as above mentioned, William Henry Sutton, alienee of William Warner, who was the oldest son of Hamill Warner, deceased, who was the oldest son of Lewis Warner, the decedent, was asked whether he elected to take any of the real estate of the said Lewis Warner at the valuation, and he answered that he elected to take purpart No. 6 (appraised at $10,466.67) at the valuation. Isaac R. Warner, the second son of the said Hamill Warner, deceased, was then asked whether he would give any more, and he answered that he would give $12,000, *i. e.*, $1,533.33 more than the valuation, and then William Henry Sutton, as alienee of each of the daughters of Hamill Warner, deceased, was asked whether he would give any more, and he declined, as such alienee, to give any more; then the other heirs were called in their order and asked whether they would give any more, and they all refused until Jacob L. Warner was reached, when he said he would give $6,500 more than the valuation, which made the whole amount offered for No. 6 by him $16,966.67. Gardiner L. Warner was next asked whether he would give any more, and he replied that he would give $17,000 for said purpart No. 6. Rebecca J. Arthur and Gardiner L. Warner, executor of Jane Warner, who was devisee of Eliza Ann Warner, a sister of Lewis Warner, the decedent, declining to give any more, William Henry Sutton was finally asked whether he, as alienee of William Warner, would give any more, and he refusing to give any more, the said purpart No. 6. was adjudged by the court to Gardiner L. Warner (in his own right) at the price or sum of $17,000.

When the right of election reached Charles A. Warner as alienee of Emma D. Warner and Lewis T. Brooke, executors of Levi E. Warner, deceased, who was a brother of the decedent, Lewis Warner, he, the said Charles A. Warner, as such alienee, elected to take purpart No. 1 at the valuation, to wit:

$2.100. All the other parties in interest refused to give any more except William Henry Sutton, who offered $3,000, or $900 more than the appraisement; it being finally offered to Charles A. Warner, as alienee aforesaid, he offered $100 more than Mr. Sutton, making the full amount offered for said purpart No. 1, $3,100, at which sum it was, by the court, adjudged to Charles A. Warner, his heirs and assigns forever.

Charles A. Warner, in his own right, elected to take purpart No. 4 at the valuation, to wit: $2,383.66. All of the other parties in interest refused to give any more except William Henry Sutton, who offered to give $3,000, or $616.34 more than the appraisement; it being finally offered to Charles A. Warner, who had the right of election, he offered $1.00 more, making the whole amount of his offer for No. 4, $3,001; at which sum it was duly adjudged and decreed by the court to him, the said Charles A. Warner, his heirs and assigns forever.

Jacob L. Warner, when the right of election passed to him, elected to take purpart No. 2 at the valuation, viz: $1,883.33. All the other parties in interest refused to give any more except Mr. Sutton, who offered to give $2,500, or $616.67 above the appraisement, and when it came back to Jacob L. Warner to make the final bid, he offered to give $1.00 more, making the whole amount of his, the said Jacob L. Warner's offer for purpart No. 2, $2,501, at which sum the court adjudged and decreed said purpart No. 2, to the said Jacob L. Warner, his heirs and assigns forever.

Isaac Warner elected to take purpart No. 3 at the valuation, to wit: $2,091.67, and all of the other parties in interest refusing to give any more, the said purpart No. 3 was, by the court, duly adjudged and decreed to him, the said Isaac Warner, his heirs and assigns forever, at the said valuation, viz: $2,091.67.

Gardiner L. Warner elected to take purpart No. 5 at the valuation, to wit: $6,283.67. All of the other parties in interest refused to give any more except Mr. Sutton, who offered to give $7,500, or $216.33 more than the appraisement, and it being offered to said Gardiner L. Warner, to whom, in this case, the right of election belonged, he refused to give any more, whereupon the said purpart No. 5 was, by the court, duly adjudged and decreed, at the sum of $7,500, unto the said William Henry Sutton, his heirs and assigns forever.

When the proceedings above described were being had in open court, on October 10th, 1885, and before any of the purparts had been adjudged to any one, Gardiner L. Warner asked leave to make a sealed bid in writing, but all of the other parties objecting to it, and remonstrating against it, he

waived the right and acquiesced in the method of making the bids which the rest had adopted, which was making the bids or offers *viva voce*, and having them at once reduced to writing by the clerk of the Orphans' Court. I may add that this has been the universal practice in this court. Gardiner L. Warner was the only one of all of the parties in interest who desired to make his offer in writing.

On November 23d, 1885, William Henry Sutton presented his petition praying for a decree adjudging purpart No. 6 to him at the valuation fixed by the inquest. He also afterwards filed exceptions to the above findings of the Auditor.

His petition was dismissed and also his exceptions to the Auditor's report, BOYER, P. J., filing the following opinion :

After the return of the inquest, which was confirmed by the court without exception, a rule was granted upon the parties interested to appear in open court and elect or refuse to take the several purparts at the valuation returnable October 10th, 1885. Upon which day all the heirs appeared in person, or were duly represented in open court, except Penrose Warner, upon whom service of notice was duly proved. The parties entitled who appeared were severally called, and in open court interrogated in the proper order as to their election to take or refuse the several purparts at the valuation put upon them by the inquest. Whereupon William Henry Sutton, as the alienee of the heir first in the order of election, elected to take No. 6 at the valuation, which was $10,466.67. Whereupon the other parties being called in their order (each being accorded but one bid), Gardiner L. Warner bid $17,000 for No. 6, which was the highest bid for the same. William Henry Sutton having declined to bid any more, the same was adjudged to the said Gardiner L. Warner, at his bid of $17,000 ; and the other purparts were in the same proceeding adjudged to various heirs in like manner ; conditioned of course upon the performance by each of the terms imposed by law, and the decree of the court in accordance therewith. Each election and bid was made orally, and immediately reduced to writing by the clerk.

On the same day Neville D. Tyson, Esq., was appointed by the court Auditor to ascertain liens, and marshal them, and ascertain and apportion owelty and dower; and, also to state the costs and expenses of said partition.

On the 19th day of December, 1885, the Auditor filed his report thereon, to which exceptions have been filed, and now pending before the court.

In the meantime on the 23d day of November (forty-four days after allotment of the purparts), William Henry Sutton filed his petition claiming to have adjudged to him purpart

No. 6, which he had elected to take at the valuation, upon the ground that Gardiner L. Warner, to whom it had been adjudged, had not submitted his bid in writing, according to the Act of April 22d, 1856.

If at the time of the appearance of the heirs to elect to take or refuse in open court, there had been objections made to oral bids either by Mr. Sutton, or any other of the parties interested, and now complaining, and this had been disregarded, there might be good ground if not for this claim, at least good ground for objecting to the validity of the proceedings. But there was no such objection, and Mr. Sutton himself bid orally in the same manner upon No. 5, and it was adjudged to him at his bid. The parties must therefore be considered as having taken their chances under the mode of proceeding adopted, and in which all participated, by which they waived their right to compel the bids to be submitted in writing in the first instance, and they cannot now recall their consent to a merely formal irregularity in which all of them acquiesced.

The proceedings in this case were conducted in strict conformity with the uniform practice of the Orphans' Court of this county, under all its judges, before and since the Act of 1856, and which has never before been questioned or departed from. Nor in a single instance, during all that time, as far as known, has any dispute or confusion resulted. A practice which has operated so long a time successfully, and to the universal satisfaction of the bench and bar of the county, can scarcely be pronounced inherently vicious, and from its convenience and continued usage we may readily account for a directory clause in an existing Act of Assembly to the contrary, having been overlooked.

Since our attention has been called to what is said upon the subject by Justice AGNEW in Klohs v. Reifsnyder, 11 P. F. S., 240, it may be well to conform our future practice to a more literal construction of the formality directed by the Act.

But Klohs v. Reifsnyder, upon which the learned counsel for the exceptant mainly relies, does not sustain his position that the bids of heirs above the valuation must in all cases be made in writing to be valid, or in other words that all such bids not made in writing are nullities. That question was not before the court. The bids in that case were in writing, and therefore such a point could not be raised for decision. The direct point in relation to bidding decided in that case was simply that one party could not have two bids upon the same purpart. Incidentally the judge delivering the opinion, remarked that the court can compel all parties to hand in their offers in writing together, or permit them to seal them up

until the court shall order them all to be opened; as undoubtedly they could.   But neither that case, nor Bartholomew's Appeal, 21 P. F. S., 291, which follows it (and is also cited), decides that a bid in open court not made in writing is void, when made, as here, with the acquiescence of all the parties. In Bartholomew's Appeal it does not even appear that the bids were made in writing; and, from the report of the proceedings it might be inferred they were not.   But at any rate all it decides is, as in Klohs *v.* Reifsnyder, that the same person, having one bid, cannot have another bid.   In the case at bar no second bid by the same person was offered.

I hold therefore that it is too late for Mr. Sutton now to dispute the title of Gardiner L. Warner to the allotment made to him of No. 6, and to have it allotted to himself; and that the adjudications as entered of record by the clerk of the Orphans' Court and recited by the Auditor, are correct and binding in law and equity.

*        *        *        *        *        *

And now, February 15th, 1886, the petition of William Henry Sutton is dismissed and his motion overruled, and the exceptions to the Auditor's report are dismissed; and the Auditor's report confirmed.

William Henry Sutton thereupon took this appeal, assigning for error the above decree of the court dismissing his petition, overruling his motion and confirming the report of the Auditor.

*G. R. Fox*, for appellant.—1. The principal question is as to the right of Mr. Sutton to a decree adjudging purpart No. 6, to him.

In answer to the rule to accept or refuse, Mr. Sutton, having the first right of choice, elected to take this purpart at the valuation.   That absolutely and irreversibly vested the title in him, unless some legal act was afterward done to deprive him of it.

The evidence is that there were several verbal bids made of higher sums, and Gardiner L. Warner, who made the last, claims that he is entitled to have it adjudged to him.

The answer is that there was no warrant of law for these bids; that they were nullities, and, of course, are to be taken as if they had never been made.

The Act of Assembly is decisive of the question.

It introduces a new and important change into a long established system, and must be construed strictly.

This the Supreme Court have done.   In Klohs *v.* Reifsnyder, 11 P. F. S., 244, they say :

" The true interpretation of the Act of 1856 warrants only

a single offer in writing, and the court can compel all parties to hand their offers in together, or permit them to seal them up until the court shall order them to be opened.

Bartholomew's Appeal, 21 P. F. S., 292: "Our brother AGNEW has shown, with striking clearness, the impropriety of bidding and overbidding in cases of partition, and that a party entitled to raise the value beyond the appraisement should do so by a proposition in writing."

This settles the question that the provision of the Act is imperative, and not directory.

Mr. Sutton stands, and can stand, upon this.

2. But it is said Mr. Sutton has waived his right. How? By standing by his election? By sitting still, and saying nothing? What right or business had he to interfere with what the others chose to say or do? If their acts were legal, he could only submit. If illegal, it was not for him to enlighten them. It was for them to manage their own case. The law imposed no duty upon him, but to answer or omit or refuse to answer to the rule. He did answer by making his choice in the legal way.

In the Estate of the Bank of Pennsylvania, 10 P. F. S., 479, the law is succinctly stated as follows: "No one is held to have waived a right unless it appears that he knew his rights, and intended a waiver of them.

*James Boyd*, for appellees.—As the Orphans' Court in matters within its jurisdiction proceeds on the same principles as a Court of Chancery (15 P. F. S., 267, Willard's Appeal), it is not easy to see how the court could have made any other decree, especially when the proceedings were not adverse, but were throughout conducted in perfect harmony and accord, without any protests or objection until forty-two days after the purparts were decreed and adjudged to the heirs, when the appellant presented his petition to the court, asking that No. 6 be decreed and adjudged him, leaving the court's decree to stand in respect to all the other purparts.

In equity, when a man has been silent when in "conscience he ought to have spoken, he shall be debarred from speaking when conscience requires him to be silent:" ROGERS, J., 7 Watts, 400.

Hence it is, "If the payer of a note stands by and sees it assigned to a third person without giving the assignee notice of an existing defence, he shall afterwards pay the amount of the note to the assignee, although the consideration thereof should have entirely failed, and whether his conduct proceeded from ignorance or design." Decker *v.* Eisenhauer, 1 Pa. St., 476. A party will be estopped from taking advantage

of action in which he has acquiesced for his own benefit: McCully *v.* R. R. Co., 8 Casey, 25.

Sutton waived any right he had to demand written bids by his taking part in the oral bidding.

Lauman *v.* Young *et al.*, 7 Casey, 308, THOMPSON, J., says: "Acquiescence in acts inconsistent with it (forfeiture) will readily dispense with a right to claim it."

Fisher *v.* Larick, 7 S. & R., 99: The defendant may insist on the writ pursuing the form prescribed by the Act, but he must take the objection at an early stage of the proceedings.

Gevett *v.* Read, 4 Yates, 456: The waiver of a lien may be inferred from the conduct of the party.

To the same effect are Lyons *v.* Miller, 4 S. & R., 280, and Brown *v.* O'Brien, 4 P. L. J. 501.

The same principle prevails in cases of waivers of the exemption laws, inquisitions and condemnations.

Hammer *v.* Freas, 19 Pa. St., 255: "A debtor must claim his exemption out of personal property before the sale commences, or he will be held as waiving his right to the exemption."

Is the provision in the Act of April 22d, 1856, in relation to bids in writing, directory or mandatory.

That it is directory the following cases abundantly show:

Cummiskey *v.* Cummiskey, 16 Weekly Notes of Cases, 149: "The provisions of the Acts of Assembly relating to partition. According to which the court must examine the title to the property previous to a judgment *quod partitio fiat* is directory only."

Massey *v.* Thomas, 6 Binney, 333: An amicable action of ejectment is good, although the Act of 1806 declares that all writs of ejectment shall be in the form prescribed by that Act and not otherwise.

Campbell *v.* Galbraith, 5 Watts, 428; Zeigler *v.* Fisher, 3 Barr, 365: "Notwithstanding the words of the Act of 1807, the defendant in ejectment may plead in abatement, although the Act directs that the plea shall only be not guilty."

Lockhart *v.* John, 7 Barr, 138: COULTER, J., "But these sections must be considered directory only." Referring to the 33d section of the Act of March 29th, 1832, providing that no order of sale shall be granted until the administrator has given bond, and the 43d section of the Act of 1834, providing that no executor or administrator shall have power to execute a decree of the Orphans' Court for sale of real estate, &c., until he shall have given security.

The opinion of the court was delivered May 10th, 1886.

PER CURIAM. We think the practice of allotting purparts

[Leonard v. Commonwealth.]

in partition on oral bids, not only pernicious, but contrary to the statute. The offer to take must be in writing. Here, however, the appellant was present and participated in the manner of allotment without any objection. He made oral bids on several of the purparts, and one of them was allotted to him. Having thus actively assented to such form of bidding and received and retained some of the benefits therefrom, he cannot now be permitted to interpose an objection to the title of the others obtained in the same manner.

> Decree affirmed and appeal dismissed at the costs of the appellant.