ALBERT KAZANGIAN, PLAINTIFF *v.* NICHOLAS F. BRADY, ET AL., DEFENDANTS

Court No. 90–04–00206

■■■■■■■■■■■

(Dated September 18, 1991)

*Albert Kazangian, pro se.*
*Stuart M. Gerson,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, (*Bruce N. Stratvert*), United States Department of Justice, Civil Division; *Judith L. Altman,* United States Customs Service, of counsel, for defendants.

OPINION AND ORDER

RESTANI, *Judge:* Plaintiff, Albert Kazangian, brings this action challenging the decision of the Department of the Treasury revoking his license as a customs broker. Plaintiff now moves, *pro se*, for judgment upon the agency record.[1] Jurisdiction is based on 28 U.S.C. § 1581(g)(2) (1988).

BACKGROUND

The Secretary of the Treasury has authority to regulate the activities of customs brokers, and has issued regulations pertaining to their licensing, duties and responsibilities. *See* 19 U.S.C. § 1641(f) (1988); 19 C.F.R. §§ 111.0–111.96 (1991). The Secretary may institute disciplinary proceedings, and, following the prescribed notice and hearing, may impose a sanction including a fine, or suspension or revocation of the broker's license. 19 U.S.C. § 1641(d)(1)–(2); 19 C.F.R. §§ 111.53–111.74. The Secretary's decision may be appealed to this court. 19 U.S.C. § 1641(e)(1).

On August 22, 1988, the Regional Customs Commissioner gave Mr. Kazangian notice of intent to institute proceedings to revoke his license, and served him with a proposed statement of charges. Administrative

---

[1] Originally, plaintiff filed this action *pro se,* then during the course of the proceedings retained an attorney. In a memorandum decision dated June 27, 1991, this court ordered plaintiff to file his Rule 56.1 motion within thirty days. *See Kazangian v. Brady,* 15 CIT 309, 310, Slip Op. 91–54 at 4 (June 27, 1991). In a letter to the court dated July 26, 1991, plaintiff sought leave to file the motion *pro se* as his attorney had not made a motion within the specified time. Leave to file *pro se* was granted.

Record Document No. ("A.R.") 28; *see* 19 C.F.R. § 111.59(b). On September 19, 1988, Mr. Kazangian responded to the proposed charges, A.R. 27; *see* 19 C.F.R. § 111.59(b); however, the Commissioner determined his response was unsatisfactory, and a statement of charges was served on January 9, 1989. A.R. 22, 24, 25; *see* 19 C.F.R. § 111.61. A hearing before an administrative law judge ("ALJ") was conducted on March 16 and March 17, 1989. A.R. 18; *see* 19 C.F.R. § 111.67(a). On June 30, 1989, the ALJ issued a decision sustaining six of the nine charges, and recommending revocation of Mr. Kazangian's license. A.R. 13 at 13–14. On January 4, 1990, the Assistant Secretary of the Treasury ("Secretary") found the evidence sufficient to establish five charges, and adopted the ALJ's decision to revoke Mr. Kazangian's license.[2] A.R. 6; *see* 19 C.F.R. §§ 111.69, 111.73. The effective date of the Secretary's decision was March 5, 1990, but was later changed to May 15, 1990. A.R. 1. Mr. Kazangian filed an appeal on April 19, 1990.[3]

## Scope of Review and Standard of Proof

In reviewing the Secretary's decision to revoke Mr. Kazangian's license, the court applies provisions of the Administrative Procedure Act. 28 U.S.C. § 2640(d) (1988). Under that Act, the reviewing court shall set aside agency actions, findings and conclusions that are unsupported by substantial evidence, an abuse of discretion, or otherwise not in accordance with law. *See* 5 U.S.C. §§ 706(2)(A), 706(2)(E) (1988); *Barnhart v. United States Treasury Dept.*, 9 CIT 287, 290–91, 613 F. Supp. 370, 373–74 (1985). The agency's findings as to the facts are conclusive if supported by substantial evidence. 19 U.S.C. § 1641(e)(3).

Generally, in administrative proceedings involving sanctions, including license revocations based on fraud, the standard of proof is "preponderance-of-the-evidence." *Steadman v. S.E.C.*, 450 U.S. 91, 102, 101 S.Ct. 999, 1008 (1981); *see* 5 U.S.C. § 556(d). The ALJ did not announce the standard of proof; however, the Secretary applied a "clear and convincing" standard, at least as to some counts.[4] A.R. 6 at 3, 5. No authority is cited for this standard. Plaintiff, of course, does not challenge the higher standard, and the court assumes for purposes of this stage of review that, even if the "preponderance-of-the-evidence" standard is appropriate, because the Secretary has discretion as to the range of penalties, he may invoke the higher standard in determining whether to revoke a license in a situation involving a charge of fraud. In any event,

---

[2] The Secretary found the evidence insufficient with respect to Charge II, and declined to adopt the ALJ's findings as to this charge. A.R. 6 at 3–4.

[3] The government has waived arguments concerning timeliness of the appeal.

[4] Both the Secretary and the ALJ mention the "clear and convincing evidence" standard with respect to Charge II, which the Secretary dismissed. A.R. 6 at 4; A.R. 13 at 8. Charge II alleged a violation of 19 U.S.C. § 1641(d)(1)(C), 19 C.F.R. § 111.53(c) and, by incorporation, 19 U.S.C. § 1592(a)(1)(A), concerning entry of merchandise into the United States through fraudulent or negligent means. The standard of proof in a 19 U.S.C. § 1592 civil penalty action based on fraud in *this* court is "clear and convincing evidence." *See* 19 U.S.C. § 1592(e). Although this may account for the reference to the "clear and convincing" standard with respect to Charge II, it does not account for the Secretary's reference to it with respect to the other charges. *See* A.R. 6 at 3, 5.

the choice as to the standard of proof does not impact the decision rendered today.

DISCUSSION

I

Nine charges were brought against Mr. Kazangian. A.R. 22. One charge was withdrawn (Charge VIII); two charges were dismissed by the ALJ (Charges III and IX), and a third charge was dismissed by the Secretary (Charge II). A.R. 6 at 4; A.R. 13 at 9, 12. The remaining five charges and specifications (Charges I and IV-VII), and supporting evidence, are reviewed below.

Charge I alleges a violation of 19 U.S.C. § 1641(d)(1)(F) and 19 C.F.R. § 111.53(f). These sections provide, in part, that it is a violation if the broker

> has, in the course of its customs business, with intent to defraud, in any manner willfully and knowingly deceived, [or] misled * * * any client * * *.

19 U.S.C. § 1641(d)(1)(F); *see also* 19 C.F.R. § 111.53(f). The specification charges that Mr. Kazangian made entries on behalf of a client, Verkerke Reproductions U.S.A., Inc. ("Verkerke"), at a certain duty rate, paid duty at a lower rate or claimed privileges under the generalized system of preferences,[5] and failed to refund the difference to the client. A.R. 22.

Beginning in November 1986, Customs conducted an audit of Cargomate Customs Clearance, the sole proprietorship owned by Albert Kazangian. A.R. 18 ("Tr") at 26–27, 100.[6] The audit revealed a system of double invoicing whereby during 1985 and 1986 Mr. Kazangian invoiced the client, Verkerke, at a duty rate of twenty percent, then entered the merchandise at lower duty rates of between 3.1 and 6.1 percent, or in some cases, free of duty. Tr. at 31–33. As evidence of this scheme, Customs relied on the auditor's testimony, as well as a summary chart,[7] which indicated by entry number, the discrepancies between the duty paid to Customs and billed to Verkerke, and showed that the client was overbilled a total of $78,642.50. Tr. at 34–35, 119. The government also relied on the testimony of a Customs investigator who had interviewed three former employees and the current president of Verkerke.[8]

In his defense, Mr. Kazangian testified that during 1984 he was contacted by Edward Albert, a Verkerke employee, with respect to importation of vinyl bags. Tr. at 174, 176. He testified that Albert told him Verkerke had had problems in the past with classification of the bags be-

---

[5] Under the generalized system of preferences, no duty is owed to Customs because the merchandise comes from a developing nation to which the United States gives a special preference.

[6] A.R. 18 is the Transcript of Proceedings from the March 16 and March 17, 1989 hearing before the ALJ.

[7] The chart was based on information contained in customs entry documents (Form CF-7501), broker bills sent to Verkerke, and copies of bills retained by Kazangian. Tr. at 34–35.

[8] Unfortunately, neither the government nor plaintiff called any Verkerke employees as a witness. Hearsay is admissible in an administrative proceeding, (*see Calhoun v. Bailar*, 626 F.2d 145, 148 (9th Cir. 1980), *cert. denied*, 452 U.S. 906 (1981); 5 U.S.C. § 556 (d)); however, the government could have strengthened its case considerably had it chosen to call one of these witnesses, rather than relying on the investigator's hearsay statements.

cause no one knew the correct rate. Tr. at 176. To avoid further problems, Mr. Kazangian agreed to enter the shipments under his own name, and bill Verkerke a flat duty rate of twenty percent; if Customs accepted the entries at a lower rate, Verkerke would receive a refund or credit at the end of the year. Tr. at 178–79. Mr. Kazangian testified that Albert told him to expect one shipment per month, but during 1985, the shipments came in almost every day and included a variety of styles. Tr. at 177. Mr. Kazangian testified that he was never able to reconcile the accounts because the Customs auditor removed all the files from his office; in any event, he testified Verkerke had stopped paying his invoices and owed him approximately $10,000. Tr. at 189–190. Mr. Kazangian stated that Edward Albert's job title at Verkerke was "traffic manager." A.R. 27.

Apart from his own testimony, Mr. Kazangian did not produce any admissible direct evidence of the agreement with Verkerke. *See* Tr. at 130–131. Moreover, when Edward Albert was interviewed by the Customs investigator, he denied knowledge of an agreement with Kazangian. Tr. at 134. Albert stated he was the "warehouse manager" not the "traffic manager"; he was responsible for stock control and was not involved with entry of merchandise. Tr. at 133–34. In addition, neither Virginia Conboy, former Verkerke clerk, nor Stephen Rediker, former Verkerke president responsible for the Cargomate account, knew of an agreement with Mr. Kazangian. Tr. at 135–37.

In the face of these denials, Mr. Kazangian relies on three pieces of evidence. The first was a letter from Verkerke, dated May 21, 1985, and signed by "Virginia Conboy, Mgr."[9] Tr. at 169–70, 312–313. Nothing in the letter, however, indicated an agreement between Mr. Kazangian and Verkerke. Tr. at 314.

The second piece of evidence was a letter dated April 15, 1986 from Mr. Kazangian to Verkerke. Tr. at 277 (Exhibit R-10). The letter informed Verkerke that Customs had approved a duty rate of 6.1 percent on some of the bags, making them eligible for a credit on invoices for which they had paid twenty percent. A.R. 18, Exhibit R-10. The letter also informed Verkerke not to pay the balance on the 1985 invoices, but that the 1986 invoices had been mailed for payment. *Id.* The Secretary's decision gives no consideration to this letter, and the ALJ discounts it as contrary to Mr. Kazangian's testimony at the hearing, and misleading in that it failed to inform Verkerke that some items were entered at less than 6.1 percent or duty free.[10] The ALJ's decision states that Mr. Kazangian's testimony at the hearing was that he told Verkerke to credit 1986 invoices against 1985 overcharges. A.R. 13 at 5–6. This court's review of the record indicates the testimony was otherwise. In fact, consistent with statements in his letter, Mr. Kazangian testified that he told Verkerke to discontinue payment on the 1985 invoices, but

---

[9] This letter was used to impeach, but was not introduced into evidence.

[10] The government's brief indicates a belief that the letter is not authentic. The ALJ did not make such a finding.

that during 1986 he billed Verkerke as shipments came in. Tr. at 188–89. Exhibit R–10 should be reconsidered.

The third piece of evidence on which Mr. Kazangian relies is a letter from Edward Albert to Mr. Kazangian, dated October 30, 1985, confirming a prior conversation and informing him "not [to] take any actions to clear our incoming vinyl products through customs at reduced or duty-free rates without first consulting me." This evidence was not introduced at the hearing; plaintiff submitted it for the first time with his motion for judgment upon the agency record. *See Plaintiff's Request for Permission to Submit Newly Found Important Evidence to be Appended to Plaintiff's 56.1 Motion.* This court has, however, granted plaintiff's motion for leave to present additional evidence.[11]

Taken together, these two pieces of evidence — the letter from Mr. Kazangian acknowledging that a credit was due for 1985 invoices and the letter from Edward Albert informing Mr. Kazangian not to clear merchandise at a reduced or duty-free rate — cast doubt on the government's evidence that Edward Albert was not involved in the customs area and lend credence to Mr. Kazangian's defense that he acted pursuant to an agreement with Verkerke. Accordingly, the case is remanded to permit Mr. Kazangian to present to a hearing officer the additional evidence submitted to this court. On remand, the ALJ shall reconsider the charge in light of all the evidence, including Exhibit R–10 and the new evidence submitted by plaintiff and any rebuttal evidence submitted by the government. The ALJ shall also state the standard of proof applied, and cite authority for the choice.

Charges IV and V allege violations of 19 C.F.R. §§ 111.22 and 111.23, which provide, in part, that the broker "shall keep current a record of all his Customs transactions in the format set forth in paragraph (d) of this section, unless an exemption has been granted" (19 C.F.R. § 111.22(a)), and shall retain the records for at least five years after the date of entry. 19 C.F.R. § 111.23(a)(2). The specifications charge that Mr. Kazangian was asked to produce the required records in connection with the Customs audit, but was unable to do so. A.R. 22.

Mr. Kazangian testified that he maintained a log, but it was not in the format required by the regulations and he did not seek an exemption. Tr. at 205–206. The auditor, however, testified that Mr. Kazangian did not produce any type of log. Tr. at 296–97. By his own admission, Mr.

---

[11] If an appropriate application is made, the court has discretion to permit a party to present additional evidence before the hearing officer. 19 U.S.C. § 1641(e)(4) provides:

> If any party applies to the court for leave to present additional evidence and the court is satisfied that the additional evidence is material and that reasonable grounds existed for the failure to present the evidence in the proceedings before the hearing officer, the court may order the additional evidence to be taken before the hearing officer and to be presented in a manner and upon the terms and conditions prescribed by the court. The Secretary may modify the findings of facts on the basis of the additional evidence presented. The Secretary shall then file with the court any new or modified findings of fact which shall be conclusive if supported by substantial evidence, together with a recommendation, if any, for the modification or setting aside of the original decision or order.

19 U.S.C. § 1641(e)(4). In a telephone conference on September 12, 1991, Mr. Kazangian informed the court that he had forgotten about the additional evidence, and came across it only when clearing out his files. Based on this explanation, and the fact that the government removed most of Mr. Kazangian's Verkerke files during the audit, Mr. Kazangian's failure to produce the evidence will be deemed excusable. In the interests of justice, the motion for leave to present additional evidence is granted. Removal of the files from Mr. Kazangian's office, however, does not warrant complete rehearing of this charge because access to the files during the proceedings was available to plaintiff. Tr. at 226.

Kazangian did not maintain the log in the required format; accordingly, the court finds that substantial evidence supports the Secretary's decision with respect to Charges IV and V.

Charge VI charges a violation of 19 C.F.R. § 141.46, which provides, in part:

> Before transacting Customs business in the name of his principal, a customhouse broker is required to obtain a valid power of attorney to do so * * *. Customhouse brokers shall retain powers of attorney with their books and papers, and make them available to representatives of the Department of Treasury as provided * * * [in this part].

19 C.F.R. § 141.46. The specification changes that Mr. Kazangian was unable to produce powers of attorney requested by the auditor. A.R. 22. The evidence was that Mr. Kazangian was requested to produce powers of attorney for thirty-two importers. *See* Tr. at 81–83 (Government's Exhibit 1, Schedule C). He was unable to produce most of the powers of attorney, and some of the documents that were produced were of little moment in that they were dated one or two days prior to the auditor's request. Tr. at 83, 93.

Mr. Kazangian testified that until mid-1987 he made entries under his own name, rather than the importer's; therefore, powers of attorney were not required. Tr. at 202–203. The evidence, however, was that several entries were made during 1986 under the importer's name, and no power of attorney covering the dates of those entries was produced. Tr. at 266–268, 298–99. As to Charge VI, therefore, the evidence supports the Secretary's findings.

Charge VII alleges a violation of 19 C.F.R. § 111.29 which provides, in part:

> [E]ach broker shall exercise due diligence in making financial settlements * * *. Each broker shall provide a written statement to a client accounting for funds * * * received from a client where no payment has been made, or received from a client in excess of the Governmental or other charges properly payable as part of the client's customs business, within 60 days of receipt. No written statement is required if there is actual payment by a broker of such funds.

19 C.F.R. § 111.29(a). Three specifications are set forth under this charge.

The first is based on the facts set forth in the first charge. The regulation imposes a duty to account for funds "received from a client" under certain conditions. Here, Mr. Kazangian insisted that at the end of 1985, Verkerke owed him money; therefore, no duty to account arose. The Secretary correctly discounted this testimony. Mr. Kazangian estimated he had billed Verkerke for $100,000 work in 1985, and he admits that some payment was made. *See* Tr. at 189–90. Hence Mr. Kazangian was at least obligated to account for the difference between the amounts paid and owed. The charge on this specification is supported by substantial evidence and will be sustained.

The second specification states that Mr. Kazangian received a $5,000 deposit from Frank Carpino in 1983 in connection with the importation of two automobiles, but failed to refund or account for the monies after entry and liquidation. A.R. 22. The evidence established that the Carpinos deposited $5,000 with Mr. Kazangian in connection with the entry of two vehicles; after the vehicles were brought into conformity with EPA requirements, Mr. Kazangian did not return the deposit despite numerous phone calls. Tr. at 140–42.

Mr. Kazangian testified that it usually takes one or two weeks to bring a car into conformity with EPA regulations; in the Carpinos' case, it took two years. Tr. at 197. When the Carpinos did not bring the car into conformity within a reasonable period of time, and failed to respond to telephone calls, Mr. Kazangian sent a letter stating that after ninety days he would charge them $100 per car per month. Tr. at 197–198. It was undisputed, however, that other than the letter stating that the Carpinos would be billed $100 per month, no accounting was rendered.[12] Tr. at 241–242. Mr. Kazangian testified that he could not render a final accounting because Mrs. Carpino had sued him for return of the money. Tr. at 261. This, however, does not excuse his failure to account within sixty days of receipt of the funds.

The third specification states that in 1983 Mr. Kazangian billed DAB Associates a sum of money in connection with an entry, then paid duty at a lower rate. A.R. 22. The entry was liquidated for an increase, and Customs sought additional duties from DAB. DAB requested a credit from Mr. Kazangian.

The evidence showed that the entry was made on October 11, 1983; Mr. Kazangian collected $745 from DAB, paid duty of $51, and after charging for his services, issued a refund to DAB for $475.01 on December 30, 1985. Tr. at 191–192 (Exhibit R-6). Kazangian claimed the delay in issuing a refund was due to a drawback, but this testimony was not developed. Tr. at 227–229. Accordingly, there was substantial evidence that an accounting was not timely made.

Substantial evidence in the record supports the Secretary's findings with respect to each of the three specifications, and Charge VII will be upheld.

## II

The remaining issue is whether the Secretary's decision to revoke Mr. Kazangian's license constitutes an abuse of discretion. The Secretary has discretion to revoke a custom broker's license if the broker has violated any "law enforced by the Customs Service or the rules or regulations" or has "with intent to defraud, in any manner willfully and knowingly deceived, misled or threatened any client." 19 U.S.C. §§ 1641(d)(1)(C), 1641(d)(1)(F); *see also* 19 C.F.R. §§ 111.53(c),

---

[12] The regulations do not define what constitutes "a written statement * * * accounting for funds." *See* 19 C.F.R. § 111.1. Without deciding what constitutes an accounting, this court finds that Mr. Kazangian's statement of anticipated charges does not satisfy the regulation.

111.53(f). It is premature to consider this issue. As the first charge, which involves fraud, must be reconsidered, the question of whether revoking Mr. Kazangian's license based on the remaining charges would be an abuse of discretion is not ripe. Upon remand, the Secretary must again exercise discretion on the issue of revocation.

### CONCLUSION

In conclusion, the Secretary's decision is affirmed with respect to Charges IV, V, VI, and VII. Charge I must be reconsidered, and the case is remanded for a determination in accordance with this opinion. In a previous opinion, this court found that Mr. Kazangian or his attorney did not prosecute this action in a timely manner and lifted the automatic stay of revocation of Mr. Kazangian's license. *Kazangian v. Brady*, 15 CIT 309, 310, Slip Op. 91–54 at 4 (June 27, 1991). As suspension would be warranted by the charges sustained in this decision and the other circumstances of the case, the court's previous decision, permitting the revocation to become effective, remains in effect during the remand proceedings. The remand determination shall be rendered within thirty days.