Jose R.A. DURAN, Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD, Respondent.

No. 81–1676.

United States Court of Appeals, Tenth Circuit.

May 31, 1983.

Paul A. Baca, Denver, Colo., for plaintiff-appellant.

Janis E. Chapman, Asst. U.S. Atty., Denver, Colo. (Joseph Dolan, U.S. Atty., and Beverly R. Buck, Sp. Asst. to the U.S. Atty., Denver, Colo., with her on the briefs), for defendants-appellees.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

McWILLIAMS, Circuit Judge.

Pursuant to 5 U.S.C. § 7703(b)(1), Jose R.A. Duran appeals to this Court from a final decision of the Merit Systems Protection Board (MSPB), which decision affirmed an initial decision by the Denver Field Of-

fice of MSPB, which, in turn, affirmed the suspension and removal of Duran by the Department of the Air Force from Duran's employment at the United States Air Force Academy at Colorado Springs, Colorado. We affirm the decision of the MSPB.

As stated, the MSPB affirmed the initial decision of the Denver Field Office of the MSPB. The decision of the Denver Field Office of MSPB was based on a three-day evidentiary hearing, at which hearing Ms. Gail E. Skaggs served as the Presiding Official. Ms. Skaggs filed an eight-page, type-written, single-spaced Initial Decision and Order, which is commendably thorough. Since the MSPB simply affirmed Ms. Skaggs' initial decision, we are, in a sense, reviewing Ms. Skaggs' decision. We are in accord with Ms. Skaggs' decision as adopted and affirmed by the MSPB.

From the record we learn that Duran was employed as a Baker's Helper, WG–5, at a cadet dining hall at the Air Force Academy at Colorado Springs, Colorado. A fellow employee in the cadet bake-shop was William Ziebolz, WG–8, who, on occasion, served as Duran's supervisor. Over a period of time, friction developed between Duran and Ziebolz. When Duran reported Ziebolz for eating dining hall food in the "clipper room," a prohibited activity, a confrontation between the two occurred. Both agreed to meet at an off-the-base location to further discuss their on-the-job differences. The testimony as to just what happened at this meeting was conflicting. Ziebolz testified that Duran, without provocation, attacked him with an 18″-pipe wrench. Duran testified that Ziebolz made the first move, and that he only used the pipe wrench in self-defense. In this regard, Ms. Skaggs found that Duran, and not Ziebolz, was the aggressor. Ziebolz sustained broken ribs and lacerations as a result of Duran's wielding of the pipe wrench, which injuries required treatment in the hospital. Ziebolz was off work for several weeks as a result of the beating.

Some four days after the altercation between Duran and Ziebolz, the matter having been brought to the attention of the authorities at the Air Force Academy, a *proposal* to suspend Duran from his employment as a bakery worker at the Academy was issued. Three days later, Academy officials issued Duran a *notice* of decision for indefinite suspension and a *proposal* to permanently remove him from his employment. Some twenty-eight days thereafter, the Academy issued Duran a final decision to remove him from his employment at the Academy.

Duran appealed both the decision to suspend and the decision to remove him from his employment. As indicated, evidentiary hearings were then held by the Denver Field Office of the MSPB, and the initial decision and order of the presiding official of that field office later became the final decision of the full MSPB, from which this appeal is taken.

■ 5 U.S.C. § 7701(c)(1)(B) provides that the decision of an agency, such as the Air Force Academy, shall be sustained on appeal to the MSPB if such decision is "supported by a preponderance of the evidence." In this regard, the MSPB found that the decision by Academy officials to indefinitely suspend and then to remove Duran from his government employment was supported by a "preponderance of the evidence." On appeal, Duran argues that MSPB applied the wrong standard, and that the "clear and convincing" standard, if not the "beyond a reasonable doubt" standard, should have been used. We disagree. The statute above referred to resolves this matter, and the standard set forth therein should be followed. See *Steadman v. S.E.C.*, 450 U.S. 91, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981).

■ In the instant case, the altercation between Duran and Ziebolz occurred on October 14, 1980. On October 19, 1980, Duran was served with a notice of proposed indefinite suspension, and three days later Duran was indefinitely suspended. In this connection, 5 U.S.C. § 7513(b)(1) provides that an employee against whom action is proposed is entitled to at least 30 days advance written notice. Duran claims that he did not get the 30-day notice prescribed by the stat-

ute. The statute, however, provides for an exception to the 30-day requirement where there is reasonable cause to believe that the employee has committed a crime for which imprisonment may be imposed. Also, applicable regulations provide that the 30 days advance notice requirement is not required where, *inter alia,* retention of the employee in an active duty status during the notice period may be injurious to the employee, his fellow workers, or the general public. 5 C.F.R. § 752.404(d)(1)(3). In this connection, the evidence in the record is that, based on the severity of the beating and the concern for the safety of fellow workers in the bakery, Academy officials determined that indefinite suspension should be invoked immediately, rather than to wait the 30-day period. MSPB found that the evidence supported this action of the Academy officials. We agree. Duran's use of an 18″-pipe wrench in his beating of Ziebolz constitutes aggravated assault.

Duran also argues that the evidence is insufficient to support the finding of MSPB that he, rather than Ziebolz, was the assailant. As above indicated, the testimony on this matter was conflicting, Duran and Ziebolz each accusing the other. We realize that Duran's version was corroborated, to some degree, by a fellow worker who accompanied him and who himself got involved in the melee. However, the MSPB was not bound to accept Duran's version of events. This was a two-on-one altercation, Duran and his accomplice against Ziebolz, who was alone at the time. Additionally, other than fists, the only weapon used was the pipe wrench wielded by Duran. Further, the attack continued when Ziebolz was on the ground, Duran continuing to hit him with the pipe wrench, and his accomplice continuing to aid and abet. There is ample evidence to support the finding of MSPB that Duran was the aggressor.

Finally, Duran complains that there is insufficient evidence to support the finding of the MSPB that to permit him to return to active duty status would be injurious to his fellow workers, and that outright removal was necessary in order to promote the efficiency of the service. We do not agree with this argument. The altercation between Duran and Ziebolz was not an isolated incident, but the culmination of long-standing on-the-job bickering between the two. Also, other employees at the bakery had filed grievances against Duran for his continued reporting of minor transgressions to his superiors. In this regard, MSPB found that Duran "had a heightened sense of duty about reporting what he perceived as infractions by co-workers or mismanagement by supervisors." Without going into further detail, the record supports the finding by the MSPB that, under the circumstances, to allow Duran to return to his job, after beating and seriously injuring Ziebolz, would impair the efficiency of the service. This entire matter was given very careful consideration by MSPB, and we find no basis for judicial intervention.

Decision affirmed.