81 F.3d 161
 Fed. Sec. L. Rep. P 99,204
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Timoleon NICHOLAOU, Petitioner,
v.
SECURITIES AND EXCHANGE COMMISSION, Respondent.
 No. 94-3990.
 United States Court of Appeals, Sixth Circuit.
 March 27, 1996.
 
 Before: BOGGS and DAUGHTREY, Circuit Judges, and MATIA, District Judge.*
 PER CURIAM.
 
 
 1
 The petitioner, stock-broker Timoleon Nicholaou, appeals an order of disciplinary sanctions imposed by the New York Stock Exchange and upheld on review by the Securities and Exchange Commission. He maintains, basically, that because his rights to due process were violated at the hearing held before the Stock Exchange's hearing panel, the ruling that resulted should be set aside. We find no grounds on which to disturb the order of the Commission and we therefore affirm.
 
 
 2
 Nicholaou was employed by Merrill Lynch, Pierce, Fenner & Smith from July 1984 through January 1988, the period in which the transactions in this case took place. In May 1992, he was brought before the New York Stock Exchange for disciplinary action based on allegations that he had breached principles of just and equitable brokering by recommending unsuitable investments and effecting unauthorized and inappropriate margin transactions. The Stock Exchange censured Nicholaou, suspended him from membership for one year, and ordered that he be supervised by his branch manager for one year following his suspension.
 
 
 3
 Nicholaou appealed the hearing panel's decision to the Securities and Exchange Commission, which reviewed that decision de novo. The Commission upheld five of the Stock Exchange's findings, setting aside several others as not sustained by the evidence. Nicholaou now appeals that decision, attacking it on several due process grounds.
 
 
 4
 In one of those attacks, Nicholaou alleged that the Stock Exchange's action against him fell outside the statute of limitations, which the petitioner pegged at five years, relying on 18 U.S.C. § 3282, or, alternatively, the limitations period established by the Supreme Court's opinion in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350 (1991). The statute in question applies to criminal prosecutions, and the Lampf decision dealt strictly with private actions brought under Section 10(b) of the Securities Exchange Act. The Commission found that neither period of limitations applied to the self-regulatory disciplinary action at issue here. We agree, and we find no authority under which to sustain the petitioner's contention that the Stock Exchange's action was so untimely as to be unfair, as a matter of due process.
 
 
 5
 Likewise unavailing is the petitioner's argument that the Stock Exchange was bound to apply the Federal Rules of Evidence at the hearing, or that it was required to meet the preponderance of the evidence standard enunciated in Steadman v. SEC, 450 U.S. 91 (1981). Nothing in the Federal Rules of Evidence indicates that they are applicable in self-regulatory proceedings of the type involved here. Moreover, the Supreme Court's decision in Steadman, requiring application of the preponderance standard in disciplinary proceedings brought under the Investment Company Act and the Investment Advisors Act, was based on legislation in which Congress clearly established the preponderance standard. Id. at 96. We know of no authority, nor have we been directed to any, that would require imposition of the preponderance standard to the type of proceeding under review in this case.
 
 
 6
 But even if the preponderance standard were relevant here, there was ample evidence to support the Commission's order upholding the Stock Exchange's decision to impose sanctions in Nicholaou's case, based on its de novo review of the record. Moreover, our review of the evidence is limited: we must affirm the Commission's findings of fact if they are supported by substantial evidence. 15 U.S.C. § 78y(a)(4); Steadman, 450 U.S. at 96 n. 12. After a careful study of the record on appeal, we are satisfied that there is substantial evidence to support the order issued in this case. Furthermore, there appears to be little to be gained by restating that evidence at length in this opinion. Most of it is not disputed by the petitioner, who complains primarily that certain transactional records and policy manuals of Merrill Lynch were not turned over prior to the hearing or were not presented as evidence at the hearing. In view of the evidence presented at the hearing, however, there can be little doubt that these documents were largely irrelevant to the charges against Nicholaou, either because there was direct testimony by witnesses in a position to know the facts surrounding the transactions in question, or because the documents were extraneous to the specific allegations against the petitioner.
 
 
 7
 For the most part, those allegations centered around the petitioner's dealings with elderly customers with very limited incomes, who wished to invest modest amounts in the hope that income from these investments would augment their Social Security benefits and other retirement income. In some cases, the accounts set up by Nicholaou were joint, involving an adult child of the principal customer. In one case, the customers were a couple in their 50's, planning for retirement. In all of the five cases that make up the basis for the Commission's action in this case, the investors advised Nicholaou that they were seeking secure, income-producing investments. None authorized Nicholaou to buy on margin, even though in some cases the type of account that they opened would have permitted such transactions. Nicholaou nevertheless made highly speculative and otherwise inappropriate investments in the accounts, and he bought on margin in at least two of the five accounts, all to the financial detriment of the customers involved.
 
 
 8
 One example will suffice to indicate the pattern found by the New York Stock Exchange to demonstrate the petitioner's failure to adhere to its rules, principally Rule 476(a)(6). In April 1985, Athena Karsiotis, who had been retired for about eleven years, opened an account with Nicholaou. At that time, her income was about $6,000 per year from Social Security benefits and a small pension. Her net worth was approximately $75,000, including approximately $45,000 of equity in her condominium. Karsiotis told Nicholaou that, because of her age and limited means, she could not afford to take any risk with her principal and that she did not want to invest in any security that was not "backed by the government." Nicholaou told her that he understood her situation because he took care of his own retired mother's investments, which were in government securities.
 
 
 9
 Despite Karsiotis's situation and her desire for safety and risk-free income, Nicholaou recommended and sold her shares of American Capital Pace Fund, Inc., International Bond Fund's Australian and New Zealand Dollar Bonds Series-22, and Merrill Lynch Basic Value Fund, Inc.
 
 
 10
 The Pace Fund's objective was capital growth, and the prospectus advised that any income received on the securities in the Fund's portfolio was "incidental" to its objective. The prospectus further advised that the Fund's shares might be subject to greater market risks than shares of funds with other objectives, and that Pace Fund was "designed for investors ... willing to accept greater risk of loss in the hopes of realizing greater gains."
 
 
 11
 Like the Pace Fund, the Basic Fund's primary objective was capital appreciation through investment in equity securities that the Fund management considered undervalued. The prospectus warned that, at times, a large portion of the Fund's holdings might carry less than favorable ratings because, contrary to traditional investment philosophy, management believed that favorable changes in market prices were more likely to occur when, among other things, securities were out of favor, earnings were depressed, investment expectations were limited, and there was no real general interest in the security or industry involved.
 
 
 12
 The Australian Fund sought to generate income by investing in a portfolio of interest-bearing debt obligations payable in Australian and New Zealand dollars. The prospectus warned that the Fund's objective of generating income might not be met because of fluctuations in the exchange rates for those currencies, which in the past had fluctuated widely in value against the American dollar.
 
 
 13
 The Commission found these investments unsuitable for an investor like Karsiotis, who had limited resources and sought to generate additional income without risking principal.
 
 
 14
 Nicholaou also engaged in conduct inconsistent with just and equitable principles of trade by using margin in Karsiotis's account. She did not understand what buying securities on margin entailed, and Nicholaou never discussed it with her or asked if she wished to use margin in purchasing securities. When she telephoned him to ask why her account was accumulating interest charges, Nicholaou told her not to worry, that the charges would be credited to her account at the end of the year. No such credits were ever made.
 
 
 15
 Nicholaou points to the fact that Karsiotis opened a Merrill Lynch Cash Management Account which entitled her to purchase securities on margin. The Commission, however, found that this decision did not serve as authorization for Nicholaou to use margin in effecting purchases for Karsiotis's account, without any discussion or explanation. His recognition of this impropriety was indicated by the fact that when she attempted to obtain an explanation of the margin charges on her statement, he deliberately misled her.
 
 
 16
 Nicholaou also effected transactions on margin in Karsiotis's account to an unwarranted extent. Karsiotis's net deposit in her account was about $20,000. During the period from April 1985 through December 1987, she was charged nearly $850 in margin interest. The Commission found, given her status as a retiree with fixed and modest income with a stated desire of risk-free investments to generate income, the use of margin to effect transactions was inappropriate, because it introduced an element of risk as well as going against Karsiotis's stated objective of enhancing her income.
 
 
 17
 Evidence in the other four cases was to much the same effect as that involving Athena Karsiotis. In our view, it was substantial enough to support the Commission's ruling against the petitioner, and it is clearly sufficiently substantial to support our decision to affirm that ruling. Nicholaou's complaint that he was deprived of copies of the original orders and the holding sheets on which certain of his notes regarding the transactions were recorded is obviously without substance in the face of this proof, as is his complaint that he followed Merrill Lynch procedure manuals in making the investments in question but was deprived of proving it because Merrill Lynch failed to produce the manuals as requested. None of that evidence would refute testimony establishing that the investment decisions Nicholaou made were unsuitable for the customers who filed complaints in this case and that he had not been authorized to trade on margin for some of those customers, who were, nevertheless, subjected to interest payments posted to their accounts as the result of margin transactions.
 
 
 18
 Finally, we reject the petitioner's contention that the failure to produce the requested documents violated the rule in Brady v. Maryland, 373 U.S. 83 (1963), in which the Supreme Court held that a prosecutor's suppression of material evidence that was favorable to the defendant violated due process. To our knowledge, that rule has never been applied outside the criminal constitutional context in which it arose. Moreover, we accept the Commission's determination that the petitioner failed to follow up on the hearing panel's invitation to submit a specific list of the records that the petitioner had not received during the discovery phase of the disciplinary proceeding below, and has therefore waived any objection to the missing documents.
 
 
 19
 For the reasons stated above, we AFFIRM the decision of the Securities and Exchange Commission.
 
 
 
 *
 The Honorable Paul R. Matia, United States District Judge for the Northern District of Ohio, sitting by designation