**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 99-60201
Summary Calendar
_____

JAMES HARVEY THORNTON,

Petitioner,

versus

SECURITIES AND EXCHANGE
COMMISSION,

Respondent.

_____

On Petition for Review of an Order of the
Securities and Exchange Commission
(Admin. Proc. File No. 3-9046)
_____

October 22, 1999

Before POLITZ, JOLLY, and WIENER, Circuit Judges:

Per Curiam*

Petitioner James Harvey Thornton ("Thornton") seeks review of an order of the Securities and Exchange Commission ("SEC" or "Commission") sustaining sanctions imposed on him by an administrative law judge ("ALJ") for violating sections 15(b)(4)(E) and 15(b)(6) of the Securities and Exchange Act of 1934. The violations involve Thornton's failure to supervise a registered representative, Gail Griseuk ("Griseuk") and, accordingly, to prevent her violations of section 17(a) of the Securities Act of

---

* Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

1933 and section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 thereunder.  Thornton admits to violating the Act but challenges the sanctions imposed.  We affirm.

I.

Facts and Proceedings

Thornton is a registered representative employed by and serving as president and compliance officer of a Houston, Texas securities brokerage firm, Payne & Thornton, Inc. d/b/a Retirement Investment Group ("Retirement").  Griseuk is a registered representative who worked for Retirement out of offices in Florida, from 1988 to late 1991.  Under her employment agreement, Griseuk received ninety percent of all commissions she generated.  She quickly became Retirement's most productive salesperson, by 1991 bringing in fifty percent of the firm's revenue.

At the time she was hired by Retirement, Griseuk represented that she had never been the subject of an investment-related, customer-initiated complaint or proceeding; but, in fact, at that time, she was the subject of two separate customer complaints alleging that she had placed her customers in unsuitable investments (both actions were dismissed).  Immediately after Griseuk joined Retirement, another customer suitability lawsuit was filed against her.  That suit resulted in a total judgment of $898,528, which forced her to file for bankruptcy protection. Less than one year later, thirty-two plaintiffs filed a class action lawsuit against her which was dismissed.

Thornton was notified of these suits by disclosure forms

supplied by the National Association of Securities Dealers, Inc. ("NASD") and by a former employee of Griseuk's. Thornton testified that he received the disclosure forms but "missed" the information on them about Griseuk's disciplinary history. In addition to failing to inform himself about Griseuk's prior wrongdoing, Thornton failed to monitor her work, audit her client accounts, conduct surprise inspections, or interview her salespeople or employees, even though, according to written supervisory procedures, Thornton, as president, was the sole officer responsible for supervision of registered representatives employed by the firm. Not until the fall of 1991, when two Griseuk clients expressed concern to Thornton regarding her high-pressure sales tactics, did Thornton modify some of Retirement's procedures and supervisory policies.

In 1991, the Division of Enforcement of the SEC brought charges against Griseuk in connection with the offer, purchase, and sale of nearly $5 million worth of securities, mostly in the form of high-risk limited partnership interests. Griseuk settled the charges, consenting to findings that she violated securities laws by making false and misleading statements and material omissions regarding the risk, safety, and liquidity of certain securities, as well as making false statements about the compensation she earned from selling those securities. She was ordered to remit $370,786, the approximate amount of her commissions, plus interest, all but $20,000 of which was waived due to her insolvency.

The Division of Enforcement of the SEC thereafter brought

3

charges against Retirement and Thornton for failure to supervise Griseuk. The ALJ, in determining the appropriate sanctions, reviewed Thornton's own disciplinary history and discovered that he had been disciplined by the NASD and state securities regulators eight different times for failure to supervise the firm's registered representatives and for mishandling client funds. On those prior incidents, Thornton was censured, fined, and once had his license revoked for six days. The ALJ, after hearing Thornton's testimony and reviewing the documentary evidence, revoked Retirement's broker-dealer registration, imposed a civil monetary penalty of $50,000.00 on Retirement, permanently barred Thornton from acting as a broker-dealer, barred him from association with any broker-dealer, and imposed a civil monetary penalty of $5,000.00 on Thornton.

Thornton and Retirement petitioned the SEC for review of the ALJ's decision. The SEC did not dispute the ALJ's findings of fact, and accordingly affirmed the civil monetary penalties and the permanent ban on supervisory work but adjusted the severe sanction of a total ban on work as a registered representative to a three-year ban. The SEC also reversed the ALJ's sanction barring Thornton from participating in penny stock offerings, finding such a bar irrelevant to the type of fraud committed.

## II.

### Standard of Review

We review the Commission's decision to impose a particular

sanction for gross abuse of discretion.[1]  The choice of sanction will not be overturned unless unwarranted in law or without justification in fact.[2]

## III.

## Discussion

Thornton does not appeal the monetary sanction or the ban on supervisory activities.  He asserts, however, that the temporary ban on his license to serve customers individually was an abuse of discretion by the SEC.  Thornton argues that as he was sixty-four years-old at the time of the hearing in 1996, a three-year ban has the same effect as a lifetime ban and would leave him with no means of supporting himself.  Moreover, he contends that neither the alleged wrongdoing in connection with Griseuk nor his prior eight disciplinary proceedings regarding inadequate supervision in any way bear on his ability to serve the public in an individual capacity; therefore, the ban on his working directly with clients was an abuse of discretion.  Thornton asks us to remove the three-year ban on his practice as a registered representative or, alternatively, to reduce the ban to not more than ninety days.

We conclude that the SEC did not abuse its discretion in banning Thornton from working as a registered representative for three years.  Sanctions for securities violations must be administered with an eye towards protecting the public rather than

---

[1] Amato v. Securities and Exchange Commission, 18 F.3d 1281, 1284 (5th Cir. 1994).

[2] Butz v. Glover Livestock Commission Co., 411 U.S. 182, 186-87 (1973).

merely punishing the wrongdoer.[3]  Certainly, revocation of a professional license and exclusion from the industry is a severe sanction which, at first glance, might appear punitive. Accordingly, the Commission has an obligation specifically to articulate why a less severe sanction would not suffice.[4]

In complying with its duty to articulate such reasons, the Commission should consider "the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations."[5]  The Commission may not presume future wrongdoing merely on the basis of past misconduct.[6]  Here, the ALJ and Commission sufficiently articulated reasons for imposing the sanction by pointing out the recurrent nature of Thornton's supervisory infractions, the perceived lack of sincerity in his testimony, his failure to recognize the wrongfulness of his prior conduct, and the likelihood of opportunities for future misconduct.

In affirming the subject order of sanctions, we are

---

[3] Beck v. Securities and Exchange Commission, 430 F.2d 673, 674 (6th Cir. 1970) (citing U.S. Supreme Court precedent and cases from other circuits); see also Meadows v. Securities and Exchange Commission, 119 F.3d 1219, 1128 n. 20 (5th Cir. 1997).

[4] Steadman v. Securities and Exchange Commission, 603 F.2d 1126, 1139-40 (5th Cir. 1979), aff'd 450 U.S. 91 (1981).

[5] Id. at 1140.

[6] Id.

particularly persuaded by the evidence that Thornton has been sanctioned eight times previously for violations in connection with the broker-dealer business.  True, as he points out, all of the prior sanctions related to his failure adequately to supervise registered representatives employed by Retirement and not to his conduct as a registered representative; but the ALJ determined that in light of several past sanctions which did not curb Thornton's unlawful behavior, the more severe sanction is in the public interest.[7]  Thornton demonstrated a continual pattern of culpable behavior, apparently reckless to the interests of customers who might be harmed.[8]  As long as he has a license to work as a registered representative, he will have opportunities to act in a supervisory capacity and otherwise to compromise the interest of clients.

In addition, we are persuaded by the conclusions of the ALJ — the only adjudicator to view the witness's demeanor — who doubted Thornton's credibility in saying that he was unaware of Griseuk's conduct prior to or during her employment with Retirement, as well as his sincerity in expressing remorse about his admitted violations of securities laws by inadequate supervision.  The ALJ found that Thornton "deliberately obfuscates," "uses excuses," and "gave blatantly untruthful testimony."  In the ALJ's view, Thornton

---

[7] The ALJ stated, "Because Mr. Thornton refuses to acknowledge that he has ever done anything wrong, the probability that he will continue violating the securities laws and regulations is almost certain."

[8] See similarly Meadows, 119 F.3d at 1228.

**7**

remained wilfully blind to Griseuk's violations because of the considerable revenue she was generating for Retirement.

On the basis of all the evidence before him, the ALJ permanently banned Thornton from working in his chosen profession as a registered representative. That evidence as well as the relevant legal standards were reviewed by the SEC which has already extended some appellate relief to Thornton by lessening the sanction to a three-year bar.[9] We agree that, in addition to the civil monetary penalty and the permanent ban on supervisory work, the three-year ban on Thornton's work as a registered representative is necessary to protect the investing public and to deter future violations. Based on our review of the Initial Decision of the ALJ and the Opinion of the Commission in light of the facts revealed by the record and the legal arguments advanced in the appellate briefs of counsel, we conclude that the three-year ban was warranted by law and justified in fact, and was not the product of an abuse of discretion. For essentially the same reasons as set forth in the well-reasoned opinions of the ALJ and the SEC, the modified order of sanctions is, in all respects, AFFIRMED.

---

[9] Meadows, 119 F.3d at 1228 n.21 (noting that the re-entry into the brokerage industry after a temporary bar is not entirely illusory).