# STEADMAN *v.* SECURITIES AND EXCHANGE COMMISSION

No. 79–1266. Argued December 3, 1980—Decided February 25, 1981

BRENNAN, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, MARSHALL, BLACKMUN, REHNQUIST, and STEVENS, JJ., joined. POWELL, J., filed a dissenting opinion, in which STEWART, J., joined, *post*, p. 104.

*Peter J. Nickles* argued the cause for petitioner. With him on the briefs was *Alex Kozinski.*

*Ralph C. Ferrara* argued the cause for respondent. With him on the brief were *Solicitor General McCree, Stephen M. Shapiro, Paul Gonson, Jacob H. Stillman,* and *Rosalind C. Cohen.**

JUSTICE BRENNAN delivered the opinion of the Court.

In administrative proceedings, the Securities and Exchange Commission applies a preponderance-of-the-evidence standard of proof in determining whether the antifraud provisions of the federal securities laws have been violated. The question presented is whether such violations must be proved by clear and convincing evidence rather than by a preponderance of the evidence.

I

In June 1971, the Commission initiated a disciplinary proceeding against petitioner and certain of his wholly owned companies. The proceeding against petitioner was brought pursuant to § 9 (b) of the Investment Company Act of 1940 [1]

___

*Briefs of *amici curiae* urging reversal were filed by *Carl L. Shipley* for the National Committee of Discount Securities Brokers; and by *Arthur F. Mathews, Robert B. McCaw, David M. Becker,* and *William J. Fitzpatrick* for the Securities Industry Association.

[1] Section 9 (b) of the Investment Company Act of 1940, 15 U. S. C. § 80a–9 (b), empowers the Commission, in specified circumstances, "after notice and opportunity for hearing . . . [to] prohibit, conditionally or

and § 203 (f) of the Investment Advisers Act of 1940.[2] The Commission alleged that petitioner had violated numerous provisions of the federal securities laws in his management of several mutual funds registered under the Investment Company Act.

After a lengthy evidentiary hearing before an Administrative Law Judge and review by the Commission in which the preponderance-of-the-evidence standard was employed,[3] the

---

unconditionally, either permanently or for such period of time as it in its discretion shall deem appropriate in the public interest, any person from serving or acting as an employee, officer, director, member of an advisory board, investment adviser or depositor of, or principal underwriter for, a registered investment company or affiliated person of such investment adviser, depositor, or principal underwriter . . . ."

[2] Section 203 (f) of the Investment Advisers Act of 1940, 15 U. S. C. § 80b–3 (f), empowers the Commission, in specified circumstances, after notice and opportunity for hearing "on the record" to "censure or place limitations on the activities of any person associated or seeking to become associated with an investment adviser, or suspend for a period not exceeding twelve months or bar any such person from being associated with an investment adviser . . . ."

[3] Disciplinary proceedings before the Securities and Exchange Commission are governed by the Commission's Rules of Practice, 17 CFR § 201.1 et seq. (1980), which enlarge, in certain respects, protections afforded by the Administrative Procedure Act (APA), 5 U. S. C. § 551 et seq. Cf. Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U. S. 519, 524 (1978) (as to 5 U. S. C. § 553, "[a]gencies are free to grant additional procedural rights in the exercise of their discretion, but reviewing courts are generally not free to impose them if the agencies have not chosen to grant them"). A respondent in a disciplinary proceeding is entitled to receive timely notice of the charges against him and the questions of fact and law to be determined. 17 CFR § 201.6 (a) (1980). He may retain counsel to represent him in connection with the proceeding, § 201.2 (b), file an answer to the charges against him and move for a more definite statement of those charges, §§ 201.7 (a) and (d), and have a trial-type hearing presided over by an impartial administrative law judge, other duly-appointed officer, or a Commission member, §§ 201.11 (b)–(c). The respondent may present oral or documentary evidence, cross-examine adverse witnesses, and object to the admission or exclusion of evidence. § 201.14 (a). A respondent may compel pro-

Commission held that between December 1965 and June 1972, petitioner had violated antifraud,[4] reporting,[5] conflict of interest,[6] and proxy[7] provisions of the federal securities laws. Accordingly, it entered an order permanently barring petitioner from associating with any investment adviser or affiliating with any registered investment company, and suspending him for one year from associating with any broker or dealer in securities.[8]

Petitioner sought review of the Commission's order in the

---

duction of evidence by subpoena, § 201.14 (b), and may obtain witness statements in the possession of the Commission's staff for cross-examination purposes, § 201.11.1. At the conclusion of the hearing, the respondent has the right to submit briefs and proposed findings of fact and conclusions of law. § 201.16 (d). The initial decision of the administrative law judge must include findings of fact and conclusions of law, with supporting reasons, on all material issues of fact, law, or discretion presented on the record. § 201.16 (a). A respondent may seek review by the Commission, which may affirm, reverse, or modify the initial decision based on its independent review of the record. §§ 201.17 (g) (2), 201.21.

[4] Section 17 (a) of the Securities Act of 1933, 15 U. S. C. § 77q (a); § 10 (b) of the Securities Exchange Act of 1934, 15 U. S. C. § 78j (b), and Rule 10b-5 thereunder, 17 CFR § 240.10b-5 (1980); §§ 206 (1)-(2) of the Investment Advisers Act of 1940, 15 U. S. C. §§ 80b-6 (1)-(2).

[5] Section 17 (a) of the Securities Exchange Act of 1934, 15 U. S. C. § 78q (a), and Rule 17a-5 thereunder, 17 CFR § 240.17a-5 (1980); §§ 30 (a) and 34 (b) of the Investment Company Act of 1940, 15 U. S. C. §§ 80a-29 (a) and 80a-33 (b).

[6] Sections 15 (a) (1), 17 (a), and 17 (e) of the Investment Company Act of 1940, 15 U. S. C. §§ 80a-15 (a) (1), 80a-17 (a), and 80a-17 (e).

[7] Section 20 (a) of the Investment Company Act of 1940, 15 U. S. C. § 80a-20 (a).

[8] Petitioner was allowed 90 days in which to sell his stock in Steadman Securities Corp. Compliance with the Commission's order has been stayed pending completion of judicial review.

Because the Commission imposed severe sanctions on petitioner, the Court of Appeals remanded to the Commission "to articulate carefully the grounds for its decision, including an explanation of why lesser sanctions will not suffice." 603 F. 2d 1126, 1143 (CA5 1979).

United States Court of Appeals for the Fifth Circuit on a number of grounds, only one of which is relevant for our purposes. Petitioner challenged the Commission's use of the preponderance-of-the-evidence standard of proof in determining whether he had violated antifraud provisions of the securities laws. He contended that, because of the potentially severe sanctions that the Commission was empowered to impose and because of the circumstantial and inferential nature of the evidence that might be used to prove intent to defraud, the Commission was required to weigh the evidence against a clear-and-convincing standard of proof. The Court of Appeals rejected petitioner's argument, holding that in a disciplinary proceeding before the Commission violations of the antifraud provisions of the securities laws may be established by a preponderance of the evidence. 603 F. 2d 1126, 1143 (1979). See n. 8, *supra*. Because this was contrary to the position taken by the United States Court of Appeals for the District of Columbia Circuit, see *Whitney* v. *SEC*, 196 U. S. App. D. C. 12, 604 F. 2d 676 (1979); *Collins Securities Corp.* v. *SEC*, 183 U. S. App. D. C. 301, 562 F. 2d 820 (1977), we granted certiorari to resolve the conflict. 446 U. S. 917 (1980). We affirm.

## II

Where Congress has not prescribed the degree of proof which must be adduced by the proponent of a rule or order to carry its burden of persuasion in an administrative proceeding, this Court has felt at liberty to prescribe the standard, for "[i]t is the kind of question which has traditionally been left to the judiciary to resolve." *Woodby* v. *INS*, 385 U. S. 276, 284 (1966). However, where Congress has spoken, we have deferred to "the traditional powers of Congress to prescribe rules of evidence and standards of proof in the federal courts" [9] absent countervailing constitutional constraints.

---

[9] There is no reason to accord less deference to congressionally prescribed standards of proof and rules of evidence in administrative proceedings than

*Vance* v. *Terrazas,* 444 U. S. 252, 265 (1980). For Commission disciplinary proceedings initiated pursuant to 15 U. S. C. § 80a–9 (b) and § 80b–3 (f), we conclude that Congress has spoken, and has said that the preponderance-of-the-evidence standard should be applied.[10]

The securities laws provide for judicial review of Commission disciplinary proceedings in the federal courts of appeals [11] and specify the scope of such review.[12] Because they do not indicate which standard of proof governs Commission adjudications, however, we turn to § 5 of the Administrative Procedure Act (APA), 5 U. S. C. § 554, which "applies . . . in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing," except in instances not relevant here.[13] Section 5 (b), 5

in federal courts. See *Woodby* v. *INS,* 385 U. S., at 284 (ascertaining first that Congress had not legislated a standard of proof for administrative deportation proceedings before determining appropriate standard).

[10] Because the task of determining the appropriate standard of proof in the instant case is one of discerning congressional intent, many of petitioner's arguments are simply inapposite. He contends, for example, that as a matter of policy, the potentially severe consequences to a respondent in a Commission proceeding involving allegations of fraud demand that his burden of risk of erroneous factfinding should be reduced by requiring the Commission to prove violations of the antifraud provisions of the securities laws by clear and convincing evidence. This argument overlooks, however, Congress' "traditional powers . . . to prescribe . . . standards of proof . . . ." *Vance* v. *Terrazas,* 444 U. S. 252, 265 (1980). It is not for this Court to determine the wisdom of Congress' prescription.

[11] Title 15 U. S. C. §§ 77i, 78y, 80a–42, and 80b–13 provide for judicial review of Commission orders in the courts of appeals.

[12] Commission findings of fact are conclusive for a reviewing court "if supported by substantial evidence." 15 U. S. C. §§ 78y, 80a–42, and 80b–13; cf. § 77i (Commission findings conclusive "if supported by evidence").

[13] This disciplinary proceeding, brought by the Commission pursuant to 15 U. S. C. § 80a–9 (b) and § 80b–3 (f), is clearly a "case of adjudication" within 5 U. S. C. § 554. See *International Telephone & Telegraph Corp.* v. *Electrical Workers,* 419 U. S. 428, 445 (1975). Both § 80a–9 (b)

U. S. C. § 554 (c)(2), makes the provisions of § 7, 5 U. S. C. § 566, applicable to adjudicatory proceedings.[14]   The answer to the question presented in this case turns therefore on the proper construction of § 7.[15]

The search for congressional intent begins with the language of the statute.   *Andrus* v. *Allard,* 444 U. S. 51, 56 (1979); *Reiter* v. *Sonotone Corp.,* 442 U. S. 330, 337 (1979);

and § 80b–3 (f) also explicitly require an "opportunity for [an agency] hearing."   Moreover, the disciplinary proceeding must be conducted "on the record."   The phrase "on the record" appears in § 80b–3 (f), and while it does not appear in § 80a–9 (b), see n. 1, *supra,* the absence of the specific phrase from § 80a–9 (b) does not make the instant proceeding not subject to § 554.   See *United States* v. *Florida East Coast R. Co.,* 410 U. S. 224, 238 (1973); *United States* v. *Allegheny-Ludlum Steel Corp.,* 406 U. S. 742, 757 (1972); *Seacoast Anti-Pollution League* v. *Costle,* 572 F. 2d 872, 876 (CA1), cert. denied, 439 U. S. 824 (1978).   Rather, the "on the record" requirement for § 80a–9 (b) is satisfied by the substantive content of the adjudication.   Title 15 U. S. C. § 80a–42 provides for judicial review of Commission orders issued pursuant to § 80a–9 (b).   Substantial-evidence review by the Court of Appeals here required a hearing on the record.   See *Citizens to Preserve Overton Park, Inc.* v. *Volpe,* 401 U. S. 402, 415 (1971); *Seacoast Anti-Pollution League* v. *Costle,* 572 F. 2d, at 877.   Otherwise effective review by the Court of Appeals would have been frustrated.   *Ibid.*   In addition, the substantive violations to be proved pursuant to §§ 80a–9 (b)(1)–(3) are virtually identical to the substantive violations stated in §§ 80b–3 (e) (1), (4), and (5), which are incorporated by reference into § 80b–3 (f).   The only substantive difference between § 80b–3 (f) and § 80a–9 (b) is that the former permits the Commission to impose sanctions on persons affiliated with an investment adviser and the latter on persons affiliated with an investment company.   In both statutes, the Commission is required to prove violations of the securities law provisions enumerated, precisely the type of proceeding for which the APA's adjudicatory procedures were intended.   See generally 410 U. S., at 246.

[14] Section 5 (b), 5 U. S. C. § 554 (c)(2), provides that "[t]he agency shall give all interested parties opportunity for . . . hearing and decision on notice and in accordance with sections 556 and 557 of this title."

[15] Petitioner makes no claim that the Federal Constitution requires application of a clear-and-convincing-evidence standard.   See Tr. of Oral Arg. 10.

*62 Cases of Jam* v. *United States,* 340 U. S. 593, 596 (1951).
Section 7 (c), 5 U. S. C. § 556 (d), states in pertinent part:

> "Except as otherwise provided by statute, the propo-
> nent of a rule or order has the burden of proof. Any oral
> or documentary evidence may be received, but the agency
> as a matter of policy shall provide for the exclusion of
> irrelevant, immaterial, or unduly repetitious evidence. A
> sanction may not be imposed or rule or order issued ex-
> cept on consideration of the whole record or those parts
> thereof cited by a party and supported by and *in accord-
> ance with* the reliable, probative, and *substantial evi-
> dence.*" (Emphasis added.)

The language of the statute itself implies the enactment
of a standard of proof. By allowing sanctions to be imposed
only when they are "in accordance with . . . *substantial* evi-
dence," Congress implied that a sanction must rest on a *mini-
mum quantity* of evidence. The word "substantial" denotes
quantity.[16] The phrase "in accordance with . . . substantial
evidence" thus requires that a decision be based on a certain
quantity of evidence. Petitioner's contention that the phrase
"reliable, probative, and substantial evidence" sets merely a
standard of *quality* of evidence is, therefore, unpersuasive.[17]

The phrase "in accordance with" lends further support to
a construction of § 7 (c) as establishing a standard of proof.
Unlike § 10 (e), the APA's explicit "Scope of review" provi-
sion that declares that agency action shall be held unlawful

---

[16] Webster's Third New International Dictionary (1976) defines "sub-
stantial" to mean "considerable in amount."

[17] Section 7 (c), of course, also sets minimum quality-of-evidence stand-
ards. For example, the provision directing agency exclusion of "irrelevant,
immaterial, or unduly repetitious evidence" and the further requirement
that an agency sanction rest on "reliable" and "probative" evidence man-
date that agency decisionmaking be premised on evidence of a certain
level of quality. Thus, while the words "reliable" and "probative" may
imply quality-of-evidence concerns, the word "substantial" implies quantity
of evidence.

if "unsupported by substantial evidence," [18] § 7 (c) provides that an agency may issue an order only if that order is "supported by and *in accordance with* . . . substantial evidence" (emphasis added). The additional words "in accordance with" [19] suggest that the adjudicating agency must weigh the evidence and decide, based on the weight of the evidence, whether a disciplinary order should be issued. The language of § 7 (c), therefore, requires that the agency decision must be "in accordance with" the weight of the evidence, not simply supported by enough evidence " 'to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' " *Consolo* v. *FMC*, 383 U. S. 607, 620 (1966), quoting *NLRB* v. *Columbian Enameling & Stamping Co.*, 306 U. S. 292, 300 (1939). Obviously, weighing evidence has relevance only if the evidence on each side is to be measured against a standard of proof which allocates the risk of error. See *Addington* v. *Texas*, 441 U. S. 418, 423 (1979). Section 10 (e), by contrast, does not permit the reviewing court to weigh the evidence, but only to determine that there is in the record " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' " *Consolo* v. *FMC, supra,* at 620, quoting *Consolidated Edison Co.* v. *NLRB*, 305 U. S.

---

[18] Section 10 (e) of the APA, 5 U. S. C § 706, is entitled "Scope of review" and provides, in pertinent part, that "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute." § 706 (2) (E).

[19] Section 10(e) expressly refers to § 7. Addition of the words "in accordance with" could not have been inadvertent. See n. 18, *supra*. This is especially true in light of the House Report's discussion of the relationship between § 7 (c) and § 10 (e): " 'Substantial evidence' [in § 10 (e)] means evidence which on the whole record is clearly substantial, plainly sufficient to support a finding or conclusion under the requirements of section 7 (c), and material to the issues." H. R. Rep. No. 1980, 79th Cong., 2d Sess., 45 (1946).

197, 229 (1938). It is not surprising, therefore, in view of the entirely different purposes of § 7 (c) and § 10 (e), that Congress intended the words "substantial evidence" to have different meanings in context. Thus, petitioner's argument that § 7 (c) merely establishes the scope of judicial review of agency orders is unavailing.[20]

While the language of § 7 (c) suggests, therefore, that Congress intended the statute to establish a standard of proof, the language of the statute is somewhat opaque concerning the precise standard of proof to be used. The legislative history, however, clearly reveals the Congress' intent. The original Senate version of § 7 (c) provided that "no sanction shall be imposed . . . except as supported by relevant, reliable, and probative evidence." S. 7, 79th Cong., 1st Sess. (1945). After the Senate passed this version, the House passed the language of the statute as it reads today, and the Senate accepted the

---

[20] It is true that the phrase "substantial evidence" is often used to denote the scope of judicial review. See n. 12, *supra.* But to conclude that the phrase "substantial evidence" in § 7 (c) defines the scope of judicial review would make the "substantial evidence" language of § 10 (e) redundant. Moreover, it is implausible to think that the drafters of the APA would place a scope-of-review standard in the middle of a statutory provision designed to govern evidentiary issues in adjudicatory proceedings. Section 7 is entitled "Hearings; presiding employees; powers and duties; burden of proof; evidence; record as basis of decision." It "is made up almost entirely of a specification of the various elements of trial procedure." 2 K. Davis, Administrative Law Treatise § 10:07, p. 332 (2d ed. 1979). More specifically, § 7 (c) allocates the burden of proof (placing it on the proponent of a rule or order), provides for a broad rule governing admissibility of evidence, directs an agency to exclude "irrelevant, immaterial, or unduly repetitious evidence," and delineates the evidentiary basis on which a "sanction may . . . be imposed."

Petitioner's argument overlooks the different functions of initial decision-making and judicial review of it. See *Charlton* v. *FTC*, 177 U. S. App. D. C. 418, 422, 543 F. 2d 903, 907 (1976); see generally 4 K. Davis, Administrative Law Treatise §§ 29.01–29.11 (1958). As we recognized in *Consolo* v. *FMC*, 383 U. S. 607 (1966), the reviewing court is not to weigh the evidence, which *Consolo* assumed had already been done.

amendment. Any doubt as to the intent of Congress is re-
·Ọ)ved by the House Report, which expressly adopted a pre-
ponderance-of-the-evidence standard:

> "[W]here a party having the burden of proceeding has
> come forward with a prima facie and substantial case, he
> will prevail unless his evidence is discredited or rebutted.
> In any case the agency must decide 'in accordance with
> the evidence.' Where there is evidence pro and con, the
> agency must weigh it and decide *in accordance with the
> preponderance.* In short, these provisions require a con-
> scientious and rational judgment on the whole record
> in accordance with the proofs adduced." H. R. Rep.
> No. 1980, 79th Cong., 2d Sess., 37 (1946) (emphasis
> added).[21]

---

[21] Representative Walter of Pennsylvania, author of the House Report
and a principal drafter of the legislation, speaking during the floor debate
on the day the bill was passed by the House, stated as to the meaning of
the phrase "in accordance with . . . substantial evidence" that "the ac-
cepted standards of proof, as distinguished from the mere admissibility of
evidence, are to govern in administrative proceedings as they do in courts
of law and equity." S. Doc. No. 248, 79th Cong., 2d Sess., 365 (1946).
This statement suggests that the usual preponderance standard was con-
templated. See *Sea Island Broadcasting Corp.* v. *FCC,* 200 U. S. App.
D. C. 187, 190, 627 F. 2d 240, 243 (1980) ("The use of the 'preponderance
of evidence' standard is the traditional standard in civil and administrative
proceedings. It is the one contemplated by the APA, 5 U. S. C. § 556
(d)"), cert. denied, 449 U. S. 834 (1980); *Collins Securities Corp.* v. *SEC,*
183 U. S. App. D. C. 301, 304, 562 F. 2d 820, 823 (1977) ("The traditional
standard of proof in a civil or administrative proceeding is the preponder-
ance standard . . ."); 9 J. Wigmore, Evidence § 2498 (3d ed. 1940); cf.
*Woodby* v. *INS,* 385 U. S., at 288 (Clark, J., dissenting).

Moreover, during the floor debate, in the context of a discussion of
§ 10 (e), it was noted that the substantial-evidence test became the scope-
of-review standard because of a desire to have courts review agency
decisionmaking more carefully than under the then-prevalent scintilla-of-
evidence test. It is clear from the debate that Congress intended agency
decisionmaking to be done according to the preponderance of the evidence:

"Mr. Springer. . . . The gentleman from Iowa . . . has gone rather

Nor is there any suggestion in the legislative history that a standard of proof higher than a preponderance of the evidence was ever contemplated, much less intended. Congress was primarily concerned with the elimination of agency decision-making premised on evidence which was of poor quality—irrelevant, immaterial, unreliable, and nonprobative—and of insufficient quantity—less than a preponderance. See *id.*, at 36–37 and 45; S. Doc. No. 248, 79th Cong., 2d Sess., 320–322 and 376–378 (1946); n. 21, *supra.*

The language and legislative history of § 7 (c) lead us to conclude, therefore, that § 7 (c) was intended to establish a standard of proof and that the standard adopted is the traditional preponderance-of-the-evidence standard.[22]

---

carefully over the provisions of the bill. I desire to call attention to only one . . . relating to the question of reviewable acts, the review of the proceedings by the judiciary, and the scope of the review. Under the present procedure, in many cases where there is any evidence, even a scintilla of evidence, decisions have been rendered and predicated on that character of evidence before the hearing tribunal.

"Mr. HANCOCK. Even though contrary to the preponderance of the evidence.

"Mr. SPRINGER. Yes, . . . that has been done in many cases even though it is contrary to the preponderance of the evidence introduced at the hearing." S. Doc. No. 248, *supra,* at 376.

[22] Petitioner's reliance on *Woodby* v. *INS, supra,* is misplaced. There the Court required the Immigration and Naturalization Service to establish facts in deportation proceedings by clear, unequivocal, and convincing evidence. The Court adopted this standard of proof because deportation proceedings were not subject to the APA, and the Immigration and Nationality Act (INA) did not prescribe a standard of proof, only the scope of judicial review. The Court reached this conclusion after examining the language, legislative history, and purpose of § 106 (a) (4) and § 242 (b) (4) of the INA. That both sections contained the words "reasonable, substantial, and probative evidence" has little bearing on the construction of somewhat different language in an entirely different statute. The language, purpose, and legislative history of these sections of the INA differ in material respects from the language, purpose, and legislative history of § 7 (c). Section 106 (a) (4) was explicitly labeled a judicial review provision. Section 242 (b) (4) was also construed by the Court

## III

Our view of congressional intent is buttressed by the Commission's longstanding practice of imposing sanctions according to the preponderance of the evidence. As early as 1938, the Commission rejected the argument that in a proceeding to determine whether to suspend, expel, or otherwise sanction a brokerage firm and its principals for, *inter alia,* manipulation of security prices in violation of § 9 of the Securities Exchange Act of 1934, 15 U. S. C. § 78i, a standard of proof greater than the preponderance-of-the-evidence standard was required. *In re White,* 3 S. E. C. 466, 539–540 (1938). Use of the preponderance standard continued after passage of the APA, and persists today. *E. g., In re Cea,* 44 S. E. C. 8, 25

to be "addressed to reviewing courts," 385 U. S., at 283, in part because at the time that the provision was adopted, there was no other scope-of-judicial-review provision in the INA, *id.,* at 284. The APA, by contrast, was passed with an explicit judicial review provision, § 10 (e), and with a provision explicitly governing evidentiary matters before the agency, § 7 (c). To the extent § 242 (b) (4) was viewed by the Court as representing a "yardstick for the administrative factfinder," the Court concluded that the provision was directed at the quality of evidence upon which an order could be based. *Id.,* at 283. The language of § 242 (b) (4) differs from the language of § 7 (c), which includes the additional phrase "in accordance with." Moreover, as explained above, the legislative history and purpose of § 7 (c) make clear that it was not limited to quality-of-evidence concerns or directed at all at judicial review.

We thus accept Justice Clark's statement in dissent, with which the Court in *Woodby* did not disagree, that §§ 7 (c) and 10 (e) of the APA have "traditionally been held satisfied when the agency decides on the preponderance of the evidence." *Id.,* at 289, n. 1. Justice Clark's understanding of § 7 (c), as expressed in *Woodby,* is entitled to particular respect. We have previously noted that the Attorney General's Manual on the Administrative Procedure Act (1947) has been "given some deference by this Court because of the role played by the Department of Justice in drafting the legislation," *Vermont Yankee Nuclear Power Corp.* v. *Natural Resources Defense Council, Inc.,* 435 U. S., at 546, and Justice Clark was Attorney General both when the APA was passed and when the Manual was published.

(1969); *In re Pollisky*, 43 S. E. C. 458, 459–460 (1967). The Commission's consistent practice, which is in harmony with § 7 (c) and its legislative history, is persuasive authority that Congress intended that Commission disciplinary proceedings, subject to § 7 of the APA, be governed by a preponderance-of-the-evidence standard. See *Andrus* v. *Sierra Club*, 442 U. S. 347, 358 (1979); *United States* v. *National Association of Securities Dealers, Inc.*, 422 U. S. 694, 719 (1975); *Skidmore* v. *Swift & Co.*, 323 U. S. 134, 140 (1944).

In *Vermont Yankee Nuclear Power Corp.* v. *Natural Resources Defense Council, Inc.*, 435 U. S. 519, 524 (1978), we stated that § 4 of the APA, 5 U. S. C. § 553, established the "maximum procedural requirements which Congress was willing to have the courts impose upon agencies in conducting rulemaking procedures." In § 7 (c), Congress has similarly expressed its intent that adjudicatory proceedings subject to the APA satisfy the statute where determinations are made according to the preponderance of the evidence. Congress was free to make that choice, *Vance* v. *Terrazas*, 444 U. S., at 265–266, and, in the absence of countervailing constitutional considerations, the courts are not free to disturb it.

*Affirmed.*

JUSTICE POWELL, with whom JUSTICE STEWART joins, dissenting.

The Securities and Exchange Commission (SEC), acting under the antifraud provisions of the Investment Company Act of 1940 and the Investment Advisers Act of 1940, has imposed severe sanctions on petitioner. He has been barred permanently from practicing his profession and also forced to divest himself of an investment at a substantial loss. In making its findings of fraud and imposing these penalties, the SEC applied the "preponderance of the evidence" standard of proof.

The Court today sustains the action of the SEC, holding

that § 7 (c) of the Administrative Procedure Act (APA), 5 U. S. C. § 556 (d), commands the use of this standard in disciplinary proceedings brought under the securities laws. The Court recognizes, however, *ante,* at 95–96, that the general provisions of the APA are applicable only when Congress has not intended that a different standard be used in the administration of a specific statute. The critical inquiry thus is the identification of the standard of proof desired by Congress.

The SEC acted in this case under § 9 (b) of the Investment Company Act of 1940, 15 U. S. C. § 80a–9 (b), and § 203 (f) of the Investment Advisers Act of 1940, 15 U. S. C. § 80b–3 (f). Sanctions imposed under these sections are the functional equivalent of penalties for fraud. At common law, it was plain that allegations of fraud had to be proved by clear and convincing evidence. *E. g., Addington* v. *Texas,* 441 U. S. 418, 424 (1979); *Woodby* v. *INS,* 385 U. S. 276, 285, n. 18 (1966); *Weininger* v. *Metropolitan Fire Insurance Co.,* 359 Ill. 584, 598, 195 N. E. 420, 426 (1935); *Bank of Pocahontas* v. *Ferimer,* 161 Va. 37, 40–41, 170 S. E. 591, 592 (1933); *Bowe* v. *Gage,* 127 Wis. 245, 251, 106 N. W. 1074, 1076 (1906). Congress enacted the Investment Company and Investment Advisers Acts against this common-law background. There is no evidence that Congress, when it adopted these Acts, intended to authorize the SEC to abandon the then-applicable standard of proof in fraud adjudications. See *Whitney* v. *SEC,* 196 U. S. App. D. C. 12, 604 F. 2d 676 (1979); *Collins Securities Corp.* v. *SEC,* 183 U. S. App. D. C. 301, 562 F. 2d 820 (1977).

The APA, upon which the Court relies, did not become law for some seven years after the enactment of the two statutes under which the SEC imposed these penalties. Again, the Court points to no specific evidence that Congress intended the APA to supplant the burden-of-proof rule generally applicable when the securities laws were enacted. Thus, the APA—the *general* statute applicable only where a *specific*

statute is not—should have no bearing on the proof burden in this case.

I imply no opinion on the question whether the evidence supports the SEC's allegations against petitioner. It is clear, however, that the SEC's finding of fraud and its imposition of harsh penalties have resulted in serious stigma and deprivation. Cf. *Addington* v. *Texas, supra.** In the absence of any specific demonstration of Congress' purpose, we should not assume that Congress intended the SEC to apply a lower standard of proof than the prevailing common-law standard for similar allegations. With all respect, it seems to me that the Court's decision today lacks the sensitivity that traditionally has marked our review of the Government's imposition upon citizens of severe penalties and permanent stigma.

---

*Petitioner has practiced the profession of investment adviser for many years. He has been forever barred from resuming that profession. Many penalties imposed under our criminal laws—such as monetary fines and probation—are far less severe, and yet these can be imposed only under the "beyond a reasonable doubt" standard of the criminal law.