Russell G. KOCH, Petitioner,

v.

SECURITIES AND EXCHANGE
COMMISSION, Respondent.

No. 97–70834.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 6, 1998.

Filed May 19, 1999.

James B. Parsons, Bellevue, Washington, for the petitioner.

Jacob H. Stillman, Associate General Counsel, Securities and Exchange Commission, Washington, D.C., for the respondent.

Before: D. W. NELSON and
KOZINSKI, Circuit Judges, and
SCHWARZER,* District Judge.

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

KOZINSKI, Circuit Judge:

We consider the retroactivity of the penny stock bar provisions of the Securities Enforcement Remedies and Penny Stock Reform Act of 1990 ("Remedies Act"), Pub.L. No. 101–429, 104 Stat. 931.

## BACKGROUND

In 1993, the SEC brought an action against Russell Koch. It alleged that he had participated in a scheme to sell unregistered securities to the public and had also violated the antifraud provisions of the securities laws. The SEC claimed that Koch had knowingly submitted materially false and misleading information concerning the Unifirst Corporation, and had set up nominee accounts through which he fraudulently controlled the sale of Unifirst stock. Koch was alleged to have committed these violations prior to or during April 1990, while acting as a market maker in Unifirst's penny stock.[1]

In January 1995, Koch consented to the entry of an order permanently enjoining him from violating the registration and antifraud provisions of the securities laws.[2] Later that year, in September, the SEC commenced a new proceeding under the Remedies Act, seeking to permanently bar Koch from participating in the offer of any penny stock. This action was based on no new violations by Koch; rather, the SEC relied on the previously-entered injunction. An administrative law judge imposed the requested remedy and the Commission affirmed. Not pleased, Koch petitions for review.

## DISCUSSION

Koch argues that the order permanently barring him from participating in any offering of penny stock is a retroactive application of the Remedies Act in violation of "the presumption against retroactive legislation [that] is deeply rooted in our jurisprudence." *Landgraf v. USI Film Prods.,* 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Because Congress expressed no intent that the Remedies Act be applied retroactively, Koch argues, the SEC may not bar him from participating in offerings of penny stocks on account of conduct that occurred before the statute's enactment. Here, any violations Koch may have committed occurred no later than April 1990, while Congress passed the Remedies Act in October 1990. The SEC counters that it has not applied the Remedies Act retroactively, as it is barring Koch based only on the 1995 injunction, not the underlying violations. Koch rejoins that the injunction itself was based on the pre-Remedies Act conduct and, therefore, so is the penny stock bar.

 Where Congress has not defined a statute's temporal reach and expressed no intent that it be given retroactive effect, courts follow the default rule that the statute has prospective application only. *See id.* at 280; *see also United States SEC v. Fehn,* 97 F.3d 1276, 1285–86 (9th Cir.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 59, 139 L.Ed.2d 22 (1997). We disfavor retroactive laws based on concerns about their fairness: "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf,* 511 U.S. at 265. A clear statement that Congress intended legislation to apply retroactively will overcome the antiretroactivity presumption, assuming that the legislation affords due process and does not otherwise run afoul of constitutional prohibitions. *See id.* at 266–68.

---

1. "Penny stocks are low-priced, highly speculative stocks generally sold in the over-the-counter (OTC) market and generally not listed on an exchange." H.R.Rep. No. 101–617, at 8 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1408, 1410.

2. In 1992, Koch had been barred from associating with any broker, dealer, investment adviser, investment company or municipal securities dealer.

■ Because "deciding when a statute operates 'retroactively' is not always a simple or mechanical task," *id.* at 268, the Supreme Court in *Landgraf* outlined a two-part analysis to guide our inquiry. The first step is to examine the statutory text in order to "determine whether Congress has expressly prescribed the statute's proper reach." *Id.* at 280. If it has, our task is to give effect to the congressional will, subject only to constitutional constraints. *See id.* If the statute does not clearly specify its own temporal reach, we must next determine "whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If the statute does operate retroactively, "our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Id.*[3]

### I

■ The Remedies Act amended the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. (1994), to give the SEC new authority to censure, place limitations on, suspend or bar unregulated persons from participating in offering penny stock. *See* Remedies Act § 504(a), 104 Stat. at 952 (amending 15 U.S.C. § 78o(b)(6)). The only reference to the reach of subparagraph 78o(b)(6)(A) is contained in its effective date provision: "[Subparagraph 78o(b)(6)(A) ] shall be effective 12 months after the date of enactment of this Act [October 15, 1990] or upon the issuance of final regulations initially implementing such [subparagraph], whichever is earlier." *Id.* § 1(c)(3)(A), 104 Stat. at 932. Neither this provision nor anything else in the

Remedies Act indicates that Congress intended subparagraph 78o(b)(6)(A) to apply retroactively. Indeed, the fact that Congress delayed subparagraph 78o(b)(6)(A)'s effective date, rather than making it effective upon enactment, suggests that Congress did not mean for subparagraph 78o(b)(6)(A) to be retroactive. *Cf. Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 839, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) ("Congress delayed the effective date on the amended version [of the statute] by six months to permit courts and attorneys to prepare for the change in the law. Thus, at the very least, the amended version cannot be applied before the effective date . . . ." (citation omitted)). Because the Remedies Act certainly does not *expressly* prescribe its own temporal reach, as per step one of *Landgraf,* we must turn to *Landgraf*'s step two and ask whether application of subparagraph 78o(b)(6)(A) would have retroactive effect on Koch.

### II

*Landgraf* explains that "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment." *Landgraf,* 511 U.S. at 269. Instead, we must determine "whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 270. Koch and the SEC give very different answers to this question. In the SEC's view, the bar it is seeking to impose on Koch is based on nothing that happened before the Remedies Act. The SEC points out that it could have-but did not-base its bar on Koch's pre-Act conduct. *See* 15 U.S.C. § 78o(b)(6)(A)(i).[4] It relied instead on the

---

**3.** Since the statute is, by hypothesis, silent in such circumstances, intent is presumably discerned from the legislative history, much to Justice Scalia's dismay. *See Landgraf,* 511 U.S. at 286, 287–88 (Scalia, J., concurring in the judgments).

**4.** The full text of subparagraph 78o(b)(6)(A) is as follows:

With respect to any person who is associated, who is seeking to become associated, or, at the time of the alleged misconduct, who was associated or was seeking to become associated with a broker or dealer, or any

1995 injunction, which was entered *after* subparagraph 78*o*(b)(6)(A) became effective in 1991.

Koch sees the 1995 injunction as merely a procedural short-cut-a means by which the SEC can establish misconduct without having to prove up the underlying wrongdoing. Nevertheless, the additional remedies provided by the Act are meant to punish, or prevent the recurrence of, misconduct by the party against whom the injunction was entered. At the very least, argues Koch, the life-long ban on penny stock dealing attaches new and grave consequences to his pre-Act conduct.

We agree with Koch. The Remedies Act was passed in order to "curb[ ] the pervasive fraud and manipulation in the penny stock market" by, *inter alia*, "expand[ing] the scope of the Securities and Exchange Commission's ... authority to bar individuals from the securities business." H.R.Rep. No. 101–617, at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1408, 1408–09. Though the SEC may prosecute a case based on the independent predicate grounds of an injunction, a conviction or the misconduct itself, the point of any such proceeding is always the same: to protect the public from individuals who have shown themselves unfit to participate in the penny stock market because of earlier misconduct. Subparagraph 78*o*(b)(6)(A) says as much: It applies to "any person who is associated, who is seeking to become associated, or, *at the time of the alleged misconduct,* who was associated or was seeking to become associated with a

person participating, or, at the time of the alleged misconduct, who was participating, in an offering of any penny stock, the Commission, by order, shall censure, place limitations on the activities or functions of such person, or suspend for a period not exceeding 12 months, or bar such person from being associated with a broker or dealer, or from participating in an offering of penny stock, if the Commission finds, on the record after notice and opportunity for a hearing, that such censure, placing of limitations, suspension, or bar is in the public interest and that such person-

broker or dealer, or any person participating, or, *at the time of the alleged misconduct,* who was participating, in an offering of any penny stock," and who has in fact violated the securities laws, been convicted of violating the securities laws or been enjoined from committing further violations. 15 U.S.C. § 78*o*(b)(6)(A) (emphasis added).

It may be technically true, but makes no sense whatsoever, to say (as does the SEC) that Koch was barred from trading in penny stocks because of the 1995 injunction. The injunction itself is not an act of misconduct. The existence of the injunction may make the SEC's job of proving Koch's unfitness easier, but the substance of the SEC's case against Koch remains the underlying violations he is alleged to have committed.

That the injunction serves no purpose independent of the underlying misconduct is evident from the SEC's reliance on the factors set forth in *Steadman v. SEC,* 603 F.2d 1126, 1140 (5th Cir.1979), *aff'd on other grounds,* 450 U.S. 91, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981), in arguing that barring Koch serves the public interest. Those factors are as follows:

the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will

(i) has committed or omitted any act or omission enumerated in subparagraph (A), (D), or (E) of paragraph (4) of this subsection;

(ii) has been convicted of any offense specified in subparagraph (B) of such paragraph (4) within 10 years of the commencement of the proceedings under this paragraph; or

(iii) is enjoined from any action, conduct, or practice specified in subparagraph (C) of such paragraph (4).

present opportunities for future violations.

*Id.* (quoting *SEC v. Blatt,* 583 F.2d 1325, 1334 n. 29 (5th Cir.1978)) (internal quotation marks omitted) (quoted in Respondent's Brief at 48). Each of the factors relates solely to Koch's conduct which gave rise to the 1995 injunction or his failure to acknowledge his past wrongdoing. Thus, for purposes of *Landgraf,* the event to which the Remedies Act attaches the legal consequence of a penny stock bar is the misconduct the targeted individual is alleged to have committed, regardless of whether the SEC chose to bring the proceeding on the basis of an injunction, a conviction or the underlying conduct.

## III

Having decided that the life-long bar on penny stock dealing was imposed on account of Koch's pre-Act conduct, we must next determine "whether it would impair rights [Koch] possessed when he acted, increase [Koch]'s liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf,* 511 U.S. at 280.

In *SEC v. First Pacific Bancorp,* 142 F.3d 1186 (9th Cir.1998), *cert. denied sub nom. Sands v. SEC,* —— U.S. ——, 119 S.Ct. 902, 142 L.Ed.2d 901 (1999), we held that barring an individual from acting as an officer and director as a consequence of pre-Remedies Act misconduct does not have an impermissible retroactive effect because "[the amendments to paragraph 78u(d)(2) ] merely codified the equitable authority to impose [an] officer and director bar which the courts already possessed and exercised." *Id.* at 1193 n. 8. By contrast, the Remedies Act gave the SEC authority it did not previously have: the power to bar unfit individuals from participation in any penny stock offering, regardless of whether those individuals are

currently associated, or are seeking to become associated, with broker-dealers.[5] The relevant House Committee Report notes that one of the Act's purposes was to expand the SEC's barring authority with respect to penny stock dealers:

> One of the Committee's concerns with current law is the difficulty facing the Commission when it seeks to bar individuals from the penny stock business. For example, the Commission has the clear authority to impose such a ban on regulated persons such as broker-dealers and their associated persons, but may have difficulty in the absence of proving the required "associated" link. Thus, in this legislation, the Committee sought to expand the barring authority to include a broad range of persons involved with the distribution of penny stocks as promoters, consultants, agents or in any of a number of other guises.

H.R.Rep. No. 101–617, at 21–22 (1990), *reprinted in* 1990 U.S.C.C.A.N. at 1423–24. Paragraph 78o(b)(6) was amended precisely in order to prevent an individual (like Koch, *see supra* n. 2) who is subject to a bar prohibiting association with broker-dealers from evading this bar by participating in the penny stock market in a more informal capacity:

> The Committee believes that the Commission needs broader proscriptive authority to address patterns of reentry and recidivism in penny stock distributions. [15 U.S.C. § 78o(b)(6)(A) ] will provide the Commission with the necessary flexibility to prevent the participation of barred persons in the penny stock distribution process by means of affiliations with broker-dealers and penny stock issuers.

*Id.* at 28–29, *reprinted in* 1990 U.S.C.C.A.N. at 1430–31.

---

**5.** Prior to the Remedies Act, paragraph 78o(b)(6) authorized the SEC to bar regulated persons-those who are associated or seeking to become associated with broker-dealers-and

persons who were associated with broker-dealers at the time of their alleged misconduct from associating with broker-dealers. *See* 15 U.S.C.A. § 78o(b)(6) (West 1990).

The Remedies Act thus increased the SEC's powers to deal with those it believes have misbehaved in the penny stock business. The SEC chose to exercise these enhanced powers with respect to conduct committed by Koch prior to passage of the Act.[6] We conclude that barring Koch from trading in penny stocks for the rest of his life increases the consequences of such pre-Act conduct. Our "presumption against statutory retroactivity" comes into full force under these circumstances, *Landgraf,* 511 U.S. at 273; *see id.* at 280, and we are compelled to hold that the Remedies Act does not authorize the SEC to impose a penny stock bar on an individual whose alleged misconduct predated enactment of subparagraph 78o(b)(6)(A).[7]

As we have determined that the SEC may not retroactively impose a penny stock bar on Koch, we do not reach his ex post facto and statute of limitations claims.

**PETITION GRANTED; INJUNCTION VACATED.**

---

**6.** Had Koch's alleged misconduct occurred after enactment but before the effective date of subparagraph 78o(b)(6)(A), *see* 15 U.S.C. § 78o(b)(6)(A) (1994), we would face a different, and more difficult, question. On the one hand, Koch would have been on notice that his actions could subject him to the new remedies provided by the Act. On the other, the delay between enactment and effective date might be viewed as a safe harbor period within which he could act without running the risk of being barred from the penny stock industry.

**7.** *Landgraf* set forth three general exceptions to the presumption against statutory retroactivity: first, "[w]hen the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive," *Landgraf,* 511 U.S. at 273; second, courts may apply "intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed," *id.* at 274; and third, "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity," *id.* at 275. As the SEC has not argued that any of these exceptions applies here, we do not address their relevance to this case.