# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD L. SACKS,

*Petitioner,*

v.

SECURITIES AND EXCHANGE
COMMISSION,

*Respondent.*

No. 07-74647

SEC No.
34-56540

ORDER AND
AMENDED
OPINION

On Petition for Review of an Order of the
Securities & Exchange Commission

Argued and Submitted
November 30, 2010—San Francisco, California

Filed February 22, 2011
Amended August 8, 2011

Before: Mary M. Schroeder, Sidney R. Thomas, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Thomas

## COUNSEL

Timothy A. Canning, Arcata, California, for the petitioner.

Brian G. Cartwright, General Counsel, Andrew N. Vollmer, Deputy General Counsel, Jacob H. Stillman, Solicitor, Mark Pennington, Assistant General Counsel, Washington, D.C., for the respondent.

## ORDER

The opinion is amended as follows:

1. Page 2745, line 30, to Page 2746, line 16. Delete:

   Where Congress has enacted a special statutory review process for administrative action, that process applies to the exclusion of the Administrative Proce-

dure Act ("APA") or other general exhaustion prin-
ciples. *See* 5 U.S.C. § 703; *Bowen v. Massachusetts*,
487 U.S. 879, 903 (1988); *Steadman v. SEC*, 450
U.S. 91, 105 (1981) ("[T]he general provisions of
the APA are applicable only when Congress has not
intended that a different standard be used in the
administration of a specific statute." (Powell, J., con-
curring)); *W. Watersheds Project v. Kraayenbrink*,
Nos. 08-35359, 08-35360, __ F.3d __, 2011 WL
149363, at *20 (9th Cir. Jan. 19, 2011) (citing *Ben-
nett v. Spear*, 520 U.S. 154, 164 (1997)); *Turtle
Island Restoration Network v. U.S. Dep't of Com-
merce*, 438 F.3d 937, 947 (9th Cir. 2006). With
respect to exhaustion, specifically, the United States
Supreme Court has held:

> "[A]ppropriate deference to Congress'
> power to prescribe the basic procedural
> scheme under which a claim may be heard
> in a federal court requires fashioning of
> exhaustion principles in a manner consis-
> tent with congressional intent and any
> applicable statutory scheme."

*Darby v. Cisneros*, 509 U.S. 137, 153 (1993) (quot-
ing *McCarthy v. Madigan*, 503 U.S. 140, 144
(1992)).

2.  Page 2749, line 10 to line 18, including footnote 4.
    Replace:

    However, the regulation does not apply here because
    15 U.S.C. § 78y sets out the exclusive procedure for
    judicial review of rules that are proposed by self-
    regulating organizations and adopted by the SEC
    under § 78s. *See Bowen*, 487 U.S. at 903; *Steadman*,
    450 U.S. at 105; *W. Watersheds Project*, 2011 WL
    149393, at *20. As a result, neither the APA nor a

regulation of general applicability promulgated under the APA—such as 17 C.F.R. § 201.430(c)—applies here.[4]

\* \* \*

[4] Further, to the extent that a regulation of general applicability conflicts with a specific statute, the statute controls. *See United States v. Doe*, 701 F.2d 819, 823 (9th Cir. 1983) ("Where an administrative regulation conflicts with a statute, the statute controls.").

With:

However, as we have explained, 15 U.S.C. § 78y(c)(1) requires only that a petitioner raise his objection during the rule-making process. Because the additional requirement in 17 C.F.R. § 201.430(c) conflicts with the more lenient requirement in § 78y(c)(1), the regulation does not apply. *See United States v. Doe*, 701 F.2d 819, 823 (9th Cir. 1983) ("Where an administrative regulation conflicts with a statute, the statute controls.").

3. Page 2749, line 20, to Page 2750, line 15. Delete:

Of course, nothing in our decision precludes 17 C.F.R. § 201.430(c) from being applied in the absence of a special statutory review process. As the Second Circuit explained:

To be sure, [15 U.S.C. § 78y] provides for judicial review of rules promulgated pursuant to §§ 78f, 78i(h)(2), 78k, 78k-1, 78o(c)(5) or (6), 78o-3, 78q, 78q-1, or 78s of Title 15. This judicial review provision makes no mention, however, of rules promulgated pursuant to [other sections of the

Exchange Act]. Nevertheless, in the absence of authorization of "special statutory review" under the Exchange Act, there is still "general statutory review" under the APA, which authorizes us to review "final agency action for which there is no other adequate remedy in a court."

*Schiller v. Tower Semiconducter, Ltd.*, 449 F.3d 286, 292-93 (2d Cir. 2006) (citations omitted); *see also In re SEC ex rel. Glotzer*, 374 F.3d 184, 189 (2d Cir. 2004) (holding that, when the APA applies, "compliance with [17 C.F.R. § 201.430] is mandatory"). Thus, 17 C.F.R. § 201.430(c), which was promulgated under the APA, would presumably apply to "action[s] made by authority delegated in §§ 200.30-1 through 200.30-18" that are not subject to a special statutory review process, such as 15 U.S.C. § 78y. 17 C.F.R. § 201.430(c).

The petition for rehearing en banc is DENIED. Fed. R. App. P. 35. No further petitions for rehearing or rehearing en banc may be filed.

---

## OPINION

THOMAS, Circuit Judge:

Richard Sacks filed a petition for review challenging a rule proposed by the Financial Industry Regulatory Authority and adopted by the Securities and Exchange Commission. The rule prohibits non-attorneys who have been banned from the securities industry from representing parties in securities-related arbitration. Sacks argues the rule is impermissibly retroactive. We agree and hold that the rule cannot be applied retroactively.

# I

The Financial Industry Regulatory Authority[1] ("FINRA") is a "self-regulatory organization" under the Securities Exchange Act. *See* 72 Fed. Reg. 42169 (Aug. 1, 2007); 15 U.S.C. §§ 78c(a)(26), 78s(b). It is "responsible for regulatory oversight of all securities firms that do business with the public; professional training, testing and licensing of registered persons; [and] arbitration and mediation . . . ." *Id.* at 42170. To achieve its objectives, FINRA may propose rules aimed at governing its member firms and associated individuals. *See* 15 § 78s(b)(1). The proposed rules are subject to approval by the Securities and Exchange Commission's Division of Market Regulation. *See id.*; 17 C.F.R. § 200.30-3(a)(12).

On April 13, 2007, FINRA proposed a rule prohibiting non-attorneys who have been banned from the securities industry from representing parties in securities-related arbitration. 72 Fed. Reg. 18703 (Apr. 13, 2007). Richard Sacks submitted a comment letter to FINRA on May 3, 2007, challenging the proposed rule. Sacks, who is not an attorney, was banned from the securities industry by FINRA in 1991. However, he was not barred from representing parties in securities-related arbitration. Sacks claims that, since 1991, he has represented parties in over 1,300 arbitration claims, tried 300 or so cases to a decision, and mediated another 250 or so claims to a settlement. The rule, though, would prevent him from continuing to represent parties in securities-related arbitration.

Among other things, Sacks claimed in his comment letter

---

[1]FINRA was created in 2007 through the consolidation of the National Association of Securities Dealers, Inc. and the member regulation, enforcement, and arbitration operations of the New York Stock Exchange. *See* Press Release, FINRA, NASD and NYSE Member Regulation Combine to Form the Financial Industry Regulation Authority—FINRA (July 30, 2007), http://www.finra.org/Newsroom/ NewsReleases/2007/P036329.

that the rule was impermissibly retroactive and constituted an additional sanction for conduct that occurred more than 16 years ago. The SEC's Division of Market Regulation rejected Sacks' protest. It adopted the rule on October 3, 2007, and commented:

> [FINRA's] rules must be designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, and, in general, to protect investors and the public interest. The Commission believes that the proposed rule change meets this standard by balancing the needs of investors to have access to representation, particularly in small cases, with [FINRA's] responsibility to protect investors, the integrity of its forum, and the public interest.

72 Fed. Reg. 56410, 56411 (Oct. 3, 2007). Sacks filed a petition for review with us on November 13, 2007, without first petitioning the SEC.

## II

We have jurisdiction over Sacks' petition, even though he did not first seek relief from the SEC after it adopted the rule.

**[1]** Our jurisdiction arises under the special statutory review process set out in 15 U.S.C. § 78y, which governs our review of rules proposed by self-regulating organizations, such as FINRA, and adopted by the SEC under § 78s.[2] Section 78y(b)(1) provides:

> A person adversely affected by a rule of the Commission promulgated pursuant to section . . . 78s of this title may obtain review of this rule in the United

---

[2]In its description of the rule, FINRA remarked that it was proposing the rule under 15 U.S.C. § 78s(b)(1). 72 Fed. Reg. at 18703 n.1.

States Court of Appeals for the circuit in which he resides or has his principal place of business or for the District of Columbia Circuit, by filing in such court, within sixty days after the promulgation of the rule, a written petition requesting that the rule be set aside.

15 U.S.C. § 78y(b)(1). There is no dispute here that Sacks was adversely affected by the rule, that he filed his petition with the appropriate circuit court, and that he filed his petition within 60 days after the SEC issued the order adopting the rule.

**[2]** Section 78y(c)(1) sets out the exhaustion requirement for this special statutory review process:

No objection to an order or rule of the Commission, for which review is sought under this section, may be considered by the court unless it was urged before the Commission or there was reasonable ground for failure to do so.

15 U.S.C. § 78y(c)(1). We agree with the D.C. Circuit that a party has sufficiently "urged" his objection to the SEC by raising his objection to the rule during the rule-making process. *See Blount v. SEC*, 61 F.3d 938, 940 (D.C. Cir. 1995). In other words, a petitioner need not have filed a petition for review with the SEC after it has adopted a rule in order to have sufficiently "urged" his objection. As the D.C. Circuit reasoned, this exhaustion requirement "is presumably aimed only at assuring that the Commission have had a chance to address claims before being challenged on them in court." *Id.* at 940.

**[3]** Here, Sacks met the exhaustion requirement in § 78y(c)(1). Sacks raised his objection to the rule in his comment letter to the SEC, and the SEC responded to his objec-

tion in its approval order. The SEC acknowledged that Sacks and three others commented:

> The proposed rule change would penalize retroactively those persons who are currently suspended or barred from the securities industry by prohibiting them from representing a party in an arbitration or mediation proceeding. In their view, it would impose a new penalty on those who have had their misconduct adjudicated and sanctions imposed.

72 Fed. Reg. at 56411. This is the same claim that Sacks raises in his petition before us. And the SEC responded to Sacks's claim:

> [FINRA] indicated that the rule is "designed to protect investors" and that at a minimum a non-attorney representative should not be "a person whom a regulatory body has suspended or barred from representing clients or conducting securities business with the public."

*Id.* Sacks provided the SEC "a chance to address [his] claims before being challenged on them in court[,]" *see Blount*, 61 F.3d at 940, and it rejected them. Therefore, he sufficiently "urged" his objection before the SEC. 15 U.S.C. § 78y(c)(1).

**[4]** We have jurisdiction over Sacks' petition because he has met all of the jurisdictional requirements under the special statutory review process set out in 15 U.S.C. § 78y, including its exhaustion requirement.

The SEC argues we lack jurisdiction under 17 C.F.R. § 201.430(c). That regulation states:

> **Prerequisite to judicial review**. Pursuant to Section 704 of the Administrative Procedure Act, 5 U.S.C. 704, a petition to the Commission for review of an

action made by authority delegated in §§ 200.30-1 through 200.30-18 of this chapter is a prerequisite to the seeking of judicial review of a final order entered pursuant to such an action. . . .

17 C.F.R. § 201.430(c). Under § 201.430(b)(1), the party must either:

fil[e] a written notice of intention to petition for review within five days after actual notice of the action to that party or aggrieved person, or 15 days after publication of the notice of action in the Federal Register, or five days after service of notice of the action on that party or aggrieved person pursuant to § 201.141(b), whichever is the earliest.

17 C.F.R. § 201.430(b)(1).

The SEC argues that it approved the rule through delegated authority under 17 C.F.R. § 200.30-3(a)(12)[3] and that Sacks did not timely file a petition with the SEC. However, as we have explained, 15 U.S.C. § 78y(c)(1) requires only that a petitioner raise his objection during the rule-making process. Because the additional requirement in 17 C.F.R. § 201.430(c) conflicts with the more lenient requirement in § 78y(c)(1), the regulation does not apply. *See United States v. Doe*, 701 F.2d 819, 823 (9th Cir. 1983) ("Where an administrative regulation conflicts with a statute, the statute controls.").

Because our jurisdiction over Sacks' petition is governed by 15 U.S.C. § 78y and 17 C.F.R. § 201.430(c) does not apply, we have jurisdiction to address the merits of the petition.

---

[3]The SEC, through 17 C.F.R. § 200.30-3(a)(12), has delegated its authority to approve rules proposed by self-regulatory organizations (such as FINRA) to the SEC's Division of Market Regulation. *See, e.g.*, 72 Fed. Reg. at 18707 n.21.

III

Sacks argues the rule at issue here is impermissibly retroactive. We agree and hold that it cannot be applied retroactively.

Our standard of review is governed by Section 78y:

> [We] shall affirm and enforce the rule unless the Commission's action in promulgating the rule is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or without observance of procedure required by law.

15 U.S.C. § 78y(b)(4). Sacks argues the rule here fails under this standard for several reasons, but because we conclude that it cannot be applied retroactively, we need only address that issue. *See Koch v. SEC*, 177 F.3d 784, 789 (9th Cir. 1999).

**[5]** "[T]he presumption against retroactive legislation . . . is deeply rooted in our jurisprudence." *Id.* at 785 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)). We "disfavor retroactive laws based on concerns about fairness: 'elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted.' " *Id.* (quoting *Landgraf*, 511 U.S. at 265). We only apply a statute or regulation retroactively if there is "clear congressional intent" that it should be applied retroactively. *Id.* at 786 (quoting *Landgraf*, 511 U.S. at 268; *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("[A] statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms.")).

Before applying a statute or regulation retroactively, we first apply a two-step framework to determine if, indeed, it has a retroactive effect. *See Mejia v. Gonzales*, 499 F.3d 991, 997 (9th Cir. 2007) (analyzing the retroactive effect of a an immigration regulation) (citing *Landgraf*, 511 U.S. 244). First, we determine whether the statute or regulation clearly expresses that the law is to be applied retroactively. *Id.* (citing *Landgraf*, 511 U.S. at 280). If not, we consider whether application of the regulation would have a retroactive effect by "attach[ing] new legal consequences to events completed before its enactment." *Id.* (quoting *INS v. St. Cyr*, 533 U.S. 289, 321 (2001)). If, under this second step, the statute or regulation has retroactive effect, "it does not govern absent clear *congressional* intent favoring such a result." *Koch*, 177 F.3d at 786 (quoting *Landgraf*, 511 U.S. at 280) (emphasis added); *see Bowen*, 488 U.S. at 208.

We addressed the retroactive effect of SEC statutes and sanctions in *Koch*. *Koch* concerned the retroactivity of a newly-added provision (italicized below) in 15 U.S.C. § 78*o*(b)(6):

> With respect to any person who is associated, who is seeking to become associated, or, at the time of the alleged misconduct, who was associated or was seeking to become associated with a broker or dealer, or any person participating, or, at the time of the alleged misconduct, who was participating, in an offering of any penny stock, the Commission, by order, shall censure, place limitations on the activities or functions of such person, or suspend for a period not exceeding 12 months, or bar such person from being associated with a broker or dealer, *or from participating in an offering of penny stock*, if the Commission finds, on the record after notice and opportunity for a hearing, that such censure, placing of limitations, suspension, or bar is in the public interest and that such person [has been convicted of

securities fraud or enjoined against conduct in viola-
tion of the securities laws].**⁴**

*Id.* (quoting 78*o*(b)(6)(A)(I) (1994) (emphasis added)).

The petitioner, Koch, had previously been barred under
§ 78*o*(b)(6) from associating with any broker, dealer, invest-
ment adviser, investment company, or municipal securities
dealer. *Id.* at 785 n.2; *see supra* note 5. After he had been
barred, Congress enacted the Securities Enforcement Reme-
dies and Penny Stock Reform Act of 1990, Pub. L. No. 101-
429, 104 Stat 931. The Act added the penny-stock-bar provi-
sion to § 78*o*(b)(6). *Id.* at 786. In light of this new provision,
the SEC attempted to permanently bar Koch from participat-
ing in penny-stock offerings, even though his misconduct
occurred prior to enactment of the provision. *Id.*

We concluded that the penny-stock provision could not be
applied retroactively. *Id.* at 787. Koch's new "life-long ban on
penny stock dealing attach[ed] new and grave consequences
to [Koch's] pre-Act conduct." *Id.* The Act "gave the SEC
authority it did not previously have: the power to bar unfit
individuals from participation in any penny stock offering,
regardless of whether those individuals are currently associ-
ated, or are seeking to become associated, with broker-

---

**⁴**The previous version of 15 U.S.C. § 78*o*(b)(6) read:

The Commission, by order, shall censure or place limitations on
the activities or functions of any person associated, seeking to
become associated, or, at the time of the alleged misconduct,
associated or seeking to become associated with a broker or
dealer, or suspend for a period not exceeding twelve months or
bar any such person from being associated with a broker or
dealer, if the Commission finds, on the record after notice and
opportunity for hearing, that such censure, placing of limitations,
suspension, or bar is in the public interest and that such person
[has been convicted of securities fraud or enjoined against con-
duct in violation of the securities laws].

15 U.S.C. § 78*o*(b)(6) (1990).

dealers." *Id.* at 788. Consequently, we "conclude[d] that barring Koch from trading in Penny Stocks for the rest of his life increases the consequences of such pre-Act conduct. Our 'presumption against statutory retroactivity' comes into full force under these circumstances." *Id.* at 789 (quoting *Landgraf*, 511 U.S. at 273).

**[6]** For all intents and purposes, *Koch* is indistinguishable from the facts here. Like Koch, Sacks was barred by the SEC from engaging in certain securities-related activities. And, like Koch, Sacks was confronted with the consequences of a new statute or regulation as a result of prior misconduct—the new rule here bars Sacks, like Koch, from participating in a securities-related activity in which he had previously been allowed to participate. Based on the reasoning in *Koch*, as well as the "deeply rooted" "presumption against retroactivity," *Koch*, 177 F.3d at 785, we hold that the rule here cannot be applied retroactively.

## IV

For the reasons above, we grant Sacks' petition for review and hold that the SEC may not retroactively apply the rules it adopted at 72 Fed. Reg. 56410-12. We need not and do not reach any other issues urged by the parties.

**PETITION FOR REVIEW GRANTED.**