**WESTMARK ASSET MANAGEMENT CORPORATION and Michael A. Usher, Plaintiffs–Appellants,**

v.

**Fred J. JOSEPH, Securities Commissioner for the State of Colorado; and Colorado Division of Securities, Defendants–Appellees.**

No. 00CA2125.

Colorado Court of Appeals, Div. I.

Oct. 25, 2001.

Dwyer, Huddleson & Ray, P.C., Joel M. Funk, Megan L. Hayes, Fort Collins, CO, for plaintiffs-appellants.

Ken Salazar, Attorney General, Gerald R. Rome, Assistant Attorney General, Patricia A. Cooper, Assistant Attorney General, Denver, CO, for defendants-appellees.

Opinion by Judge TAUBMAN.

Plaintiffs, Westmark Asset Management Corporation (Westmark) and Michael A. Usher, appeal the final order of defendants, Fred J. Joseph, Securities Commissioner for the State of Colorado, and the Colorado Division of Securities (Division), denying their application for licensure as an investment advisor and investment advisor representative, respectively. We affirm.

On August 27, 1999, Westmark and Usher submitted applications for licensure with the Division. When the applications were filed, Usher was subject to a disciplinary order of the Securities and Exchange Commission (SEC). The Division sought to deny the two applications on the grounds that the SEC order constituted a statutory disqualification from licensure pursuant to the Colorado Se-

curities Act (Act), § 15–51–410(1)(f)(II), C.R.S.2001. The Division commenced administrative proceedings to deny the applications and provided Westmark and Usher notice of the hearing, the hearing date, and the charges.

Before the hearing, both parties filed prehearing statements and moved for summary judgment. In denying the motions, the Administrative Law Judge (ALJ) concluded that the denial of a license application was discretionary, genuine issues of material fact existed, and the Division failed to establish that denying the applications was "in the public interest."

In January 2000, the ALJ conducted a hearing to determine whether the applications should be denied. The ALJ framed the issues accordingly: (1) whether Usher was subject to an SEC order that qualified as grounds for denial pursuant to § 11–51–410(1)(f)(II); and if so, (2) whether denial of the license applications was necessary or appropriate in the public interest and consistent with the purposes and provisions of the Act, in accordance with the requirements of § 11–51–704(2), C.R.S.2001.

In a thorough, well-reasoned initial decision, the ALJ ruled in March 2000 that the license applications of Westmark and Usher should be granted. The ALJ concluded that although the Division had established that Usher was subject to an SEC order under § 11–51–410(1)(f)(II), denial was not necessary or appropriate in the public interest or consistent with the purposes and provisions of the Act.

The Division filed exceptions to the ALJ's initial decision and argued that sufficient evidence existed in the record from which the commissioner could conclude that denial of the license applications was necessary or appropriate in the public interest and consistent with the purposes and provisions of the Act.

In October 2000, the commissioner issued a lengthy decision in which he agreed with the Division, reversed the ALJ's initial decision, and issued a final order denying the license applications of Westmark and Usher.

## I. Due Process

Westmark and Usher contend that the Division and the commissioner denied their right to procedural due process by not providing adequate notice, prior to the administrative hearing, of the public interest standard used to evaluate their applications. We disagree.

Section 11–51–410(1), C.R.S.2001, provides that the securities commissioner may deny an application for licensure under the Act if he or she makes two findings: (1) that the applicant meets one of the criteria listed in subsections (a) through (*l* ) of § 11–51–410(1), and (2) that the action meets the requirements of § 11–51–704(2).

Section 11–51–704(2), in turn, provides in pertinent part: "No rule, form, or order may be made, amended, or rescinded unless the securities commissioner finds that the action is necessary or appropriate in the public interest and is consistent with the purposes and provisions of this article."

As set forth in § 11–51–101(2), C.R.S.2001, "The purposes of [the Act] are to protect investors and maintain public confidence in securities markets while avoiding unreasonable burdens on participants in capital markets. This article is remedial in nature and is to be broadly construed to effectuate its purposes."

The Act, § 11–51–101(3), C.R.S.2001, also states:

> The provisions of this article and rules made under this article shall be coordinated with the federal acts and statutes to which references are made in this article and rules and regulations promulgated under those federal acts and statutes, to the extent coordination is consistent with both the purposes and the provisions of this article.

■ Adequate notice reasonably conveys information that will allow a license applicant a reasonable opportunity to prepare for a hearing. *Price Haskel, Inc. v. Denver Dep't of Excise & Licenses,* 694 P.2d 364 (Colo. App.1984).

■ In determining whether a license applicant has been accorded procedural due

process, there must be sufficient administrative and statutory standards and safeguards to protect against the exercise of unfettered discretion. *Squire Rest. & Lounge, Inc. v. City & County of Denver,* 890 P.2d 164, 166 (Colo.App.1994). In making such determination, a reviewing court may examine the overall statutory scheme to determine whether it provides adequate notice to persons of ordinary intelligence of the conduct that will be considered relevant to the inquiry at issue. *Squire, supra,* 890 P.2d at 168–69.

■ We disagree with the contentions of Westmark and Usher that without notice of the applicable standard defining public interest before the ALJ hearing, they were deprived of the opportunity to present relevant evidence, and that this deprivation was exacerbated by the commissioner's use of a different standard of public interest. We also disagree with the contentions of Westmark and Usher that the commissioner relied on a standard of public interest that had not been expressed by the Division at the hearing, was not contained in the record, had not been previously articulated in any regulation, and was not contained in any prior reported decision of the commissioner or any Colorado court. We do so for several reasons.

First, Westmark and Usher indicated to the Division on at least four occasions that they understood an evaluation of whether their applications were "in the public interest" would be a consideration in denying their applications. On none of these occasions did Westmark and Usher allege the public interest standard was unclear or request a definition from the Division. Indeed, they argued successfully before the ALJ that the denial of their license applications was not in the public interest. They did so by presenting evidence concerning the mitigating factors surrounding Usher's disciplinary history, the limited sanctions imposed against him by the SEC, and Usher's intent to modify his past behavior in a different segment of the securities industry. Westmark and Usher did not raise the issue of lack of standards concerning the public interest until they filed their response to the Division's appeal of the ALJ's initial decision.

Furthermore, Westmark and Usher did not identify what additional evidence, if any, they would have presented had they known of the factors the commissioner considered.

Second, the record reveals that the commissioner applied the same "public interest" standard as did the ALJ. Both defined public interest in the context of the purposes of the Act as set forth in § 11–51–101(2). However, for additional guidance, the commissioner cited the factors in *Steadman v. Securities & Exchange Commission,* 603 F.2d 1126, 1140 (5th Cir.1979), *aff'd on other grounds,* 450 U.S. 91, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981). In assessing the propriety of sanctions imposed for violations of federal securities law, the *Steadman* court articulated six factors: (1) the egregiousness of the respondent's actions; (2) the isolated or recurrent nature of the infractions; (3) the degree of scienter involved; (4) the sincerity of the respondent's assurances against future violations; (5) the respondent's recognition of the wrongful nature of his or her conduct; and (6) the likelihood that his or her occupation will present opportunities for future violations.

Although the ALJ did not cite *Steadman* in her initial decision, she evaluated whether the license applications were in the public interest by considering these same factors.

Third, *Hide–A–Way Massage Parlor, Inc. v. Board of County Commissioners,* 198 Colo. 175, 597 P.2d 564 (1979), and *Elizondo v. State,* 194 Colo. 113, 570 P.2d 518 (1977), upon which Westmark and Usher rely, are distinguishable. In *Hide–A–Way Massage Parlor,* the supreme court held that an applicant for a massage parlor license was denied due process when the board of county commissioners used more stringent standards than those contained in the statute, without clearly defining them or giving applicants fair notice of what evidence it would consider in determining whether its requirements had been met. Here, in contrast, Westmark and Usher presented substantial evidence concerning the public interest. The ALJ found this evidence persuasive and used it as a basis to rule in their favor. Thus, they cannot reasonably contend that they were denied fair notice of the factors that would influence the ALJ's decision. Further, the

ALJ's criteria for determining the public interest were based on, and were not apart from, the statutory purposes.

Similarly, in *Elizondo v. State, supra,* the supreme court held that an applicant for a probationary driver's license was denied due process when a hearing officer employed no standards at all in exercising his discretion. Here, in contrast, the standards employed by the ALJ were the very ones argued by Westmark and Usher as relevant.

Further, as discussed above, the commissioner actually employed and considered the same factors when determining whether granting the license applications was in the public interest.

Therefore, we conclude that Westmark and Usher had adequate notice of the meaning of the term "public interest" and furthermore, that they have failed to demonstrate any prejudice arising from the commissioner's definition of the term.

## II. Substantial Evidence

■ Westmark and Usher further contend that, given the standard of public interest that the commissioner applied, his decision is not supported by substantial evidence in the record as a whole. Again, we disagree.

■ A commissioner may substitute his or her own judgment in making findings of ultimate fact from the record and is not bound by the ALJ's findings of ultimate fact, as long as the commissioner's findings have a reasonable basis in law and are supported by substantial evidence. *See State Bd. of Med. Exam'rs v. McCroskey,* 880 P.2d 1188 (Colo. 1994); *Colorado State Bd. of Dental Exam'rs v. Major,* 996 P.2d 246 (Colo.App.1999).

■ An appellate court must consider whether the commissioner's decision is supported by "substantial evidence" in the record viewed as a whole. *See Colorado Office of Consumer Counsel v. Pub. Utils. Comm'n,* 786 P.2d 1086 (Colo.1990).

■ Substantial evidence is that quantum of probative evidence that a fact finder would accept as adequate to support a conclusion, without regard to the existence of conflicting evidence. *Metro Moving & Storage Co. v. Gussert,* 914 P.2d 411 (Colo.App.1995).

Here, following a three-day hearing, the ALJ made extensive findings of fact concerning disciplinary proceedings against Usher by the SEC, three other states, and the National Association of Securities Dealers.

The ALJ found there was a basis for Usher's statutory disqualification under § 11–51–410(1)(f)(ii), based upon SEC proceedings against him in connection with his employment with a full-service retail brokerage firm, in which he was president and registered representative. The ALJ found that the SEC's final administrative order involving Usher concluded that between March and November 1994, a branch office of Usher's prior brokerage firm sold $5.4 million worth of stock to retail customers in 862 transactions involving high pressure, fraudulent sales practices. As part of its final order, the SEC barred Usher from associating with broker-dealers.

Additionally, while the ALJ considered various mitigating factors in Usher's favor, she also found as aggravating factors that the National Association of Securities Dealers found in one proceeding that Usher continued to act as a broker-dealer while his license was suspended, and that Usher's actions in this regard indicated "a disturbingly casual attitude toward regulatory authority." A 1996 disciplinary proceeding in Colorado resulted in a settlement in which Usher consented to sanctions consisting of a sixty-day suspension of his Colorado sales representative license and a one-year restriction on associating with any broker-dealer in a supervisory capacity.

Based upon these and other factual findings of the ALJ, the commissioner concluded that:

Colorado investors need to be assured that individuals that conduct themselves in such a manner should not be able to leave one segment of the securities industry only to turn up in another segment. . . . A broker-dealer or investment advisor should not put [his or her] own interests above those of [his or her] clients. As demonstrated by the activities of the Denver branch office of [Usher's former brokerage firm],

investors were not protected from unscrupulous sales practices. Given those circumstances, public confidence in the securities markets by those particular investors was, no doubt, shaken.

The commissioner also adopted all of the ALJ's findings of fact.

Therefore, we conclude substantial evidence exists to support the commissioner's decision that the applications were not in the public interest.

### III. Public Interest Standard

■ Westmark and Usher argue that the commissioner erred by relying on the factors defining "public interest" outlined in *Steadman, supra.* We are not persuaded.

■ As a general rule, we defer to an administrative agency's interpretation of a statute it administers involving a subject matter that calls for the technical expertise the agency possesses. *Commercial Fed. Sav. & Loan Ass'n v. Douglas County Bd. of Equalization,* 867 P.2d 17 (Colo.App.1993).

■ Here, the commissioner interpreted the term "public interest" contained in § 11–51–704(2) in conjunction with the purposes of the statute and in reliance on the factors stated in *Steadman, supra,* noted in Part I. Federal rulings provide appropriate guidance when no Colorado case law or authority interprets provisions of the Act. *See Rosenthal v. Dean Witter Reynolds, Inc.,* 908 P.2d 1095 (Colo.1995). Moreover, as stated above, § 11–51–101(3) expressly provides that the state rules and orders shall be coordinated with the federal securities laws.

Accordingly, we conclude that the commissioner properly relied on the *Steadman* factors for guidance in defining public interest as that term is used in § 11–51–704(2). Because those factors are reasonable, we defer to his interpretation.

The final order of the commissioner is affirmed.